**In re Roberto RANGEL, Debtor.**

**Bankruptcy No. 97–14309–WCH.**

United States Bankruptcy Court,
D. Massachusetts.

April 23, 1999.

---

John Sommerstein, Law Offices of John Sommerstein, Boston, MA, for Debtor.

Doreen B. Solomon, Milton, MA, Chapter 13 Trustee.

## DECISION ON TRUSTEE'S MOTION FOR RECONSIDERATION OF ORDER ALLOWING EMPLOYMENT OF REAL ESTATE BROKER

WILLIAM C. HILLMAN, Chief Judge.

I. Background

On May 5, 1997, Roberto J. Rangel (the "Debtor") filed for relief under Chapter 13 of the United States Bankruptcy Code. On Schedule A, the Debtor listed an interest in his residence which he holds as a tenancy by the entirety with his wife (the "Property"). He listed the value of the Property as $190,000 and the encumbrances as $162,648. The Debtor declared an exemption in his interest in the amount of $15,000.

The Court confirmed the Debtor's Chapter 13 Plan on July 15, 1997. The Order of Confirmation provided that upon confirma-

tion, all property of the estate would vest in the Debtor. It further provided that unsecured creditors would be paid a minimum of 10% of their claims.

In October of 1998, the Standing Chapter 13 trustee (the "Trustee") filed a motion to dismiss the case on the grounds that the Debtor was in arrears under the plan which was a material default. On November 6, 1998, the Debtor filed an opposition to the Trustee's motion in which he admitted that he was in material default under his plan as a result of his failure to make plan payments. The Debtor further stated that he was in the process of selling his house and that he would use the proceeds to make a lump sum payment in satisfaction of his obligations under his plan.

On November 9, 1998, the Debtor filed a motion (the "Employment Motion") seeking authorization to employ a real estate broker to sell the Property (the "Broker"). The Court granted the motion on November 13, 1998.

Also on November 9, 1998, the Debtor filed a Notice of Intended Private Sale of Real Estate (the "Notice") and a Motion for Authorization of Private Sale of the Property (the "Sale Motion"). In the Motion and Notice, the Debtor explained that from the sale price of $290,000 he intended to satisfy the encumbrances, his non-debtor wife's one-half interest and his exemption and remit the remainder to the Trustee to hold pending the filing of an amended plan, the dismissal of the case or the entry of a discharge. Although the Notice and the Sale Motion state that the Broker agreed to a 5% commission of the gross sales price, the commission was not listed as a disbursement in the Notice. The Sale Motion noted that the Property "has been on the market for approximately 2 months and this offer is the highest in receipt."

On November 19, 1998, the Trustee filed an objection to the Sale Motion and his Motion By Trustee John P. Fitzgerald to Reconsider Endorsement Order Allowing Employment of Real Estate Broker and Objection to Said Motion (the "Reconsideration Motion"). The Trustee objects to the sale on the grounds that the Debtor has not amended his plan, proposed applying the equity in the Property toward the plan, filed an application for compensation for counsel or timely obtained authority to hire the Broker, citing *In re Jarvis*, 53 F.3d 416 (1st Cir.1995) (holding only extraordinary circumstances warrant employment *post facto* ). In the Reconsideration Motion, the Trustee contends that the holding in *Jarvis* prevents the Debtor from employing the Broker.

After the parties presented their arguments at the hearing on the various motions, they agreed that it would be appropriate to let the sale go forward. I therefore entered an order authorizing the sale. I continued the motion to dismiss generally. With respect to the Employment Motion, I ruled that the full commission could be paid from the interest of the non-debtor spouse subject to a 50% reimbursement from the Debtor if I ruled that the motion to employ was properly granted. I took the Employment Motion under advisement. The parties agreed that, with respect to that motion, the threshold issue is whether the Property is property of the estate post-confirmation and, if not, whether Court authorization to employ a real estate broker would be required.

## II.  Analysis

Property of the estate is defined in 11 U.S.C. § 541. 11 U.S.C. § 1306(a) augments that definition as follows:

(a) Property of the estate includes, in addition to the property specified in section 541 of this title—

(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11,

or 12 of this title whichever occurs first; and

(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

11 U.S.C. § 1306(a).

■ Therefore, unlike Chapter 7, Chapter 13 property of the estate includes assets acquired post-petition. Despite the language in 11 U.S.C. § 1306(a) that post-petition assets are property of the estate until the case is converted, dismissed or closed, 11 U.S.C. § 1327(b) contains another provision for the termination of property of the estate. That section provides that "[e]xcept as otherwise provided in the plan or in the order confirming the plan, the confirmation of a plan vests all of the property of estate in the debtor." 11 U.S.C. § 1327(b).

■ Sections 1306(a) and 1327(b) are difficult to reconcile. That is, the vesting of property of the estate in a debtor upon confirmation contravenes having post-petition assets included in property of the estate until the case is closed, dismissed or converted. Numerous courts have written on this issue and three lines of cases have emerged.

The first line holds that property of the estate ceases to exist after confirmation of the plan. *Oliver v. Toth (In re Toth)*, 193 B.R. 992 (Bankr.N.D.Ga.1996); *In re Rhodes*, 1995 WL 128486 (Bankr.D.Idaho 1995); *In re Mason*, 45 B.R. 498, 500 (Bankr.D.Or.1984), *aff'd* 51 B.R. 548 (D.Or. 1985). Giving great weight to the effect of § 1327(b), this line of cases holds that property of the estate revests in a debtor upon confirmation and, consequently the effect of the revesting is that the property is no longer subject to the automatic stay

and may be subject to the claims of post-petition creditors. According to courts which adopt this view, such a holding enables a debtor to obtain post-confirmation credit more easily during the term of the Chapter 13 and protects those creditors who extend such credit by enabling them to collect on such obligations without waiting until the Chapter 13 case is converted, dismissed or closed. *Oliver*, 193 B.R. at 996. Under *Oliver*, the possible derailment of a debtor's plan by post-petition creditors would be alleviated by that jurisdiction's requirement that during the case Chapter 13 debtors must seek authorization from the trustee before incurring debt.[1] *Id.* at 997. Moreover, according to the *Oliver* court, if a debtor wants post-confirmation protection, the plan can so provide. *Id.*

The second line of cases holds that the Chapter 13 estate continues after confirmation of the Chapter 13 plan. The Eight Circuit adopted this position in *Security Bank of Marshalltown v. Neiman*, 1 F.3d 687 (8th Cir.1993). In *Neiman*, after the court confirmed their Chapter 13 Plan, the debtors incurred post-confirmation debts and converted to a Chapter 7. The Chapter 7 trustee brought preference actions and wanted to distribute the limited proceeds to Chapter 7 and 13 administrative claim holders. The bank objected to the distribution because, as a Chapter 13 unsecured claim holder, it would not get paid. The bank argued that the post-confirmation expenses could not be entitled to an administrative priority because no estate existed post-confirmation. The Eighth Circuit stated that the only issue before it was whether a Chapter 13 estate existed after confirmation.

The court recognized the split of authority on the issue and concluded that those cases which held that the estate continues to exist post-confirmation were better rea-

---

1. In this district, Chapter 13 debtors are required to comply with 11 U.S.C. § 363, Fed. R.Bankr.P. 4001 and 6004. See MLBR Appendix 1, 13–14. *See also* 11 U.S.C. § 1305(c) (disallowing post-petition consumer debt claim if claimant failed to obtain the approval of the Trustee when practicable.)

soned. The court stated that under § 1327(b) an estate might hold no property but that it does not cease to exist. The court bolstered its argument by citing to other statutes which contain references to a post-confirmation estate. *Id.* At 690–91. See 11 U.S.C. § 347(a) ("Ninety days after the final distribution under section ... 1326 of this title .. the trustee shall stop payment on any check remaining unpaid, and any remaining property of the estate shall be paid into the court ..."); § 704(9) (the trustee shall "make a final report and file a final account of the administration of the estate with the court and with the United States Trustee."); § 1302(b) (incorporating § 704(9)), § 349 (dismissal "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.").[2] The court agreed with the court in *Riddle v. Aneiro (In re Aneiro)*, 72 B.R. 424, 428–29 (Bankr.S.D.Cal.1987), that if "Congress had intended for confirmation to so dramatically affect the expansive definition of property of the estate found in § 1306, it knew how to draft such a provision." *Id.* The court ruled that the estate continued post-confirmation and that the post-confirmation expenses were properly entitled to treatment as administrative expenses. 1 F.3d at 691.

The third line of cases holds that all but the property of the estate which a debtor needs to fund the Chapter 13 plan vests in that debtor post-confirmation. *In re Leavell*, 190 B.R. 536 (Bankr.E.D.Va.1995); *In re Ziegler*, 136 B.R. 497, 501 (Bankr. N.D.Ill.1992); *Riddle v. Aneiro (In re Aneiro)*, 72 B.R. 424, 429 (Bankr.S.D.Ca. 1987). This approach represents the middle ground between the first two approaches.

The court in *Leavell* decided that such a legal conclusion is warranted because there must be something for the Chapter 13 trustee to administer post-confirmation and § 1306 should be given full effect instead of being rendered superfluous. *Leavell*, 190 B.R. at 539. The court found that such a policy decision is warranted because the automatic stay should only protect that portion of a debtor's income which is devoted to the plan; the remainder of a debtor's income need not be protected from a debtor's post-petition financial mishaps. *Id.* at 540. The court found the policy decision particularly warranted because post-petition creditors who are not entitled to an administrative claim should have an ability to collect on a claim prior to the conversion, dismissal or closing of the case. *Id.* at 541.[3]

■ These three approaches illustrate the difficulty in harmonizing §§ 1306(a) and 1327(b). Before attempting to reconcile these statutes, the Court is mindful that statutes should be construed so as not to render any statute superfluous. *Woodfork v. Marine Cooks & Stewards*, 642 F.2d 966, 970–71 (5th Cir.1981).

Under the line of cases which give great weight to § 1327(b), various statutes are rendered meaningless or superfluous. For example, § 1305 provides the grounds under which a post-confirmation creditor can file a proof of claim. If there is no post-confirmation estate and stay, a post-confirmation creditor would not need to file such a claim. If § 1327(b) revests property of the estate in a debtor, the language in § 1306 (property of the estate remains as such until the case is "closed, dismissed or converted"), § 704(9) (trustee to administer estate) and § 1329 (trustee and unse-

---

**2.** Another statute which the court did not reference but which belongs in this discussion is 11 U.S.C. § 1305(a)(2) which provides that an entity may file a proof of claim for a consumer debt, "that arises after the date of the order for relief ... that is for property or services necessary for the debtor's performance under the plan." If no estate exists post-confirmation, such a statute would be rendered meaningless.

**3.** The court limited its holding to post-petition income and specifically excluded from its holding property acquired post-petition. 190 B.R. at 541.

cured creditor can seek to amend plan)[4] is rendered superfluous. Furthermore, it would render unnecessary the application of Fed.R.Bankr.P. 4001 and 6004 post-confirmation as a debtor would not have to seek court approval to sell or encumber real property which is not property of the estate.[5]

In addition to the problems with statutory construction, such a theory means that if a Chapter 13 debtor were to obtain a windfall one day after confirmation, such a windfall would not be available to creditors. It also means that a post-petition creditor could attach those wages which a debtor needs to fulfill the terms of the plan without running afoul of the automatic stay.

The proffered benefit of this theory is that a debtor will be able to obtain credit easily and a creditor to whom that debtor would be indebted will be easily able to collect on that debt. The Court questions this benefit. First, if the theory behind Chapter 13 is that a debtor is to devote disposable income to the repayment of creditors, it is unclear why the Code should be interpreted to enable a debtor to incur more debt. Second, the Code and our local rules contemplate oversight of the obtaining of credit which indicates that it was not Congress' intent to ensure a debtor could easily obtain credit post-petition. Third, the Code provides a mechanism for the repayment of a creditor who has extended credit for property or services which were necessary for a debtor to effectuate the plan. That Congress chose not to include all post-petition creditors seems to indicate that those creditors who extend credit for property or services which are not necessary to the plan do so

at the peril of not being able to collect on that debt until the debtor is free from the bankruptcy. *See Annese v. Kolenda (In re Kolenda)*, 212 B.R. 851, 855 (W.D.Mich. 1997) ("[T]o allow post-confirmation creditors to undermine the ability of pre-confirmation creditor to be paid would place creditors who were or should have been aware of debtors' financial difficulties in a better position than those who may have extended credit before debtors' precarious financial position arose."). Such a conclusion makes sense in light of the Code policy that all of a debtor's disposable income, not just a portion, should be dedicated to the plan.

It might be argued that another benefit of this approach is that a debtor would be more willing to attempt reorganization over liquidation if all property of the estate vested in the debtor upon confirmation without further oversight from a court. As explained above, however, a debtor is still subject to oversight post-confirmation. Moreover, Chapter 13 offers a debtor relief unavailable under Chapter 7 such as the "super discharge", retention of assets, mortgage rehabilitation, lien modification and the co-debtor stay.

Under the line of cases which give greater weight to § 1306(a), debtors would be potentially inhibited from obtaining post-petition credit and post-petition creditor may be inhibited from collecting on such a debt until a case is closed, dismissed or converted except as provided under § 1305. As I explained above, the Court does not find these issues troubling.

As for statutory construction, under this line of cases, § 1327(b) would be rendered superfluous. Section 348(f),[6] enacted after

---

**4.** If there is no property of the estate, the necessity or the ability of the Trustee or an unsecured creditor to modify a plan as provided in § 1329 would be questionable.

**5.** An argument could be made that although the real property is not property of the estate, a court should and could exercise oversight over sales or refinancings to ensure that such actions would not hamper a debtor's ability to

make monthly plan payments. The need for court oversight, however, is questionable under this theory as even plan payments would not be property of the estate.

**6.** 11 U.S.C. § 348(f) provides as follows:
(1) Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title—

*Neiman,* arguably would also be rendered meaningless.[7] Under that section, Congress attempted to resolve the issue of what constitutes property of a Chapter 7 estate when a case is converted from Chapter 13 to Chapter 7.[8] Under the statute, if a case is converted in good faith, property of the estate in Chapter 7 is what was property of the estate on the Chapter 13 filing date to the extent that a debtor retains control over the same. If the case is converted in bad faith, property of the Chapter 7 case includes property of the estate as of the date of conversion.

One court has written that § 348 supports the conclusion that property of the estate exists post-confirmation. *City of Chicago v. Fisher (In re Fisher),* 203 B.R. 958 (N.D.Ill.1997). In that case, the court explained as follows:

> Although § 348(f)(1)(A) generally rejects the result of *Lybrook*—the post-conversion estate contains the estate property as of the date of the petition's filing rather than conversion—the new subsection operates in a way that implies the existence of estate property after confirmation. By defining the post-conversion estate as property of the estate in the debtor's possession or under the debtor's control "on the date of conversion," and because conversion may occur after confirmation or 'at any time,' § 1307(a),

(A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion; and
(B) valuations of property and of allowed secured claims in the chapter 13 case shall apply in the converted case, with allowed secured claims reduced to the extent that they have been paid in accordance with the chapter 13 plan.
(2) If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property in the converted case shall consist of the property of the estate as of the date of conversion.

**7.** In his treatise, Judge Lundin writes as follows:

then the post-confirmation estate cannot generally be devoid of property. Moreover, § 348(f)(2) makes the same implication; indicating some agreement with *Lybrook*'s reasoning, that subsection protects against bad faith conversions by deeming the post-conversion estate to include 'property of the estate as of the date of conversion.'

203 B.R. at 963–64.

The line of cases which holds that property of the estate consists of that which a debtor needs to satisfy the terms of the plan, the so called "middle ground" approach is not without problems. First, while the approach seems equitable, it nullifies both §§ 1327(b) and 1306(a). Moreover, it is unclear what would constitute post-confirmation property of the estate under this formulation. For example according to *In re Ziegler,* 136 B.R. 497 (Bankr.N.D.Ill.1992), post-confirmation property of the estate is only that portion of income from services which a debtor needs to fund the plan. *See Annese v. Kolenda (In re Kolenda),* 212 B.R. 851, 855 (W.D.Mich.1997) ("courts have differed widely concerning how broadly 'necessary' should be construed.")

In *City of Chicago v. Fisher, supra,* the court claimed to adopt the middle ground approach. In effect, however, it presented a fourth approach. In an effort to recon-

> The logic of the 1994 amendments to § 348 supports the argument that property acquired by a Chapter 13 debtor by inheritance or windfall after confirmation belongs to the debtor. Such property was not property of the estate 'as of the date of filing the petition' and no creditor has any (reasonable) expectation of payment from that property, except possibly upon bad faith conversion.
>
> Keith M. Lundin, *Chapter 13 Bankruptcy,* § 6.18 (2nd ed. Supp.1996).

**8.** "This amendment would clarify the Code to resolve a split in the case of (sic) law about what property is in the bankruptcy estate when a debtor converts from chapter 13 to chapter 7." HR Rep. 103–834, 103rd Cong., 2nd Sess. 42–43 (Oct. 4, 1994); 140 Cong. Rec. H10770 (Oct. 4, 1994).

cile both §§ 1306(a) and 1327(b), the court concluded that the property of the estate which vests in a debtor at confirmation is that which is property of the estate as of the date of confirmation. *Id.* at 962. Section 1306(a) then operates to replenish the estate post-confirmation until the case is closed converted or dismissed. *Id.*

This approach does reconcile §§ 1306(a) and 1327(b). Furthermore, it gives meaning to the language in §§ 347, 349, 704(9), 1302, 1305 and 1329. Although such a ruling would bring into the estate post-confirmation income and assets, it does not run afoul of § 348(f) which would exclude such assets from the Chapter 7 estate in the event of a good faith conversion. The automatic stay would enable a debtor to consummate a plan and would protect post-petition creditors to the extent discussed above.

The Court agrees with the court in *Ziegler, infra,* that "[r]emedial legislative drafting would more appropriately solve the conundrum over which all of the above authorities have labored so long with varying results." 136 B.R. at 502. Based upon all of the foregoing, the Court concludes that the approach suggested by the court in *Fisher* is the best way to harmonize these statutes. Having concluded that, I need to consider its application to this case.

III.   Conclusion

■   Pursuant to the approach I adopt and as a result of the vesting language in the Order of Confirmation, the Property, including the equity above the mortgage and the Debtor's exemption, vested in the Debtor on confirmation and is no longer property of the estate. As such, the Debtor was not required to file an application to employ the Broker and the order granting the same will be vacated.[9] The order granting the sale motion will stand as the Debtor is required to comply with Fed. R.Bankr.P. 4001 and 6004 during the course his Chapter 13 case.

9.   Accordingly, the Reconsideration Motion

■   Under a decision which this Court recently issued, however, the Debtor is required to submit an amended plan and amended schedules I and J because he plans to use the proceeds of the sale to make a lump sum payment to satisfy his plan. *See In re Martin,* 232 B.R. 29 (Bankr.D.Mass.1999). Further, counsel is required to file a fee application to the extent that one is required under the local rules. The Court will enter a separate order consistent with this decision.