Marcelino **BARBOSA** and Mariana Barbosa, Appellants,

v.

Doreen **SOLOMON** and Mellon Mortgage Company, Appellees.

Marcelino Fernandes Barbosa and Mariana Barbosa, Debtors.

No. Civ.A. 99–11922–REK.

United States District Court, D. Massachusetts.

Jan. 12, 2000.

---

Anthony L. Gray, Joseph F. Ryan, Brown, Rudnick, Freed & Gesmer, Boston, MA, for Marcelino Barbosa, Mariana Barbosa, appellants.

Doreen B. Solomon, Office of U.S. Trustee, Boston, MA, for Doreen Solomon, appellee.

Samuel Shriro, Boston, MA, Richard S. Hackel, Boston, MA, for Mellon Mortgage Company, appellee.

### Opinion

KEETON, District Judge.

### I.

Marcelino and Mariana Barbosa (together, "debtors") appeal "an order and related opinion" of the United States Bankruptcy Court for the District of Massachusetts (Eastern Division) (Feeney, J.), which they designate together as the "Modification Order" of July 30, 1999 (hereinafter the "Order"). Though on somewhat different reasoning, this court affirms.

At the outset I note a concern about the validity of a contention that a party may appeal an "opinion" (or "memorandum", as Bankruptcy Judge Feeney called it), or "Opinion / Decision Memorandum" as the Bankruptcy Clerk's docketing called it in noting "Order: Regarding [80–1] Opinion / Decision Memorandum". More on that subject appears in Parts VI and VII of this Opinion.

The Order granted a motion of the Chapter 13 Trustee ("trustee") and denied in part a motion of Mellon Mortgage Company ("Mellon"). In practical effect, the Order modified the debtors' Chapter 13 plan by requiring the debtors to hold for

possible distribution a sum in excess of only 10 percent of the net proceeds of the sale of their real property ("Property") at 26 Payson Avenue, Boston, Massachusetts. *See In re Barbosa*, 236 B.R. 540 (Bankr. D.Mass.1999).

As recorded in the docket sheet of the Bankruptcy Court, the Memorandum Opinion / Decision of Judge Joan N. Feeney and the Order from which the debtors have filed notice of appeal were as follows:

> Motion for Modification Of Plan After Confirmation by Doreen B. Solomon, [65–1] Objection By Debtors; [64–1] Motion To Modify Order Of March 31, 1999 To Compel Debtors' Counsel To Escrow The Net Sale Proceeds Pending Further Order Of This Court And/Or To Compel Turnover Of $50,668.35 From The Net Sale Proceeds And To Compel Conversion To A Case Under Chapter 7 In The Event That This Case Becomes Ripe For Dismissal By Mellon Company, [68–1] Objection By Debtors [64–1] Motion. IN ACCORDANCE WITH THE FOREGOING, THE COURT HEREBY GRANTS THE CHAPTER 13 TRUSTEE'S MOTION TO MODIFY PLAN AND MELLON'S MOTION TO MODIFY ORDER IN PART. THE COURT DENIES MELLON'S MOTION TO THE EXTENT MELLON SEEKS TO COMPEL CONVERSION IF THE CASE BECOMES RIPE FOR DISMISSAL. For Complete Memorandum, See Doc. No. 80.
>
> ORDER: Regarding [80–1] Opinion / Decision Memorandum, Regarding [63–1] Motion For Modification Of Plan After Confirmation By Doreen B. Solomon, Regarding [65–1] Objection By Debtors to [63–1] Motion; [64–1] Motion To Modify Order Of March 31, 1999 To Compel Debtors' Counsel To The Net Sale Proceeds Pending Further Order Of This Court And/Or To Compel Turnover Of $50,668.35 From the Net Sale Proceeds And To Compel Conversion to a Case Under Chapter 7 in the Event that this Case Becomes Ripe for Dis-

> missal By Mellon Mortgage Company, Regarding [68–1] Objection By Debtors' To [64–1] Motion IN ACCORDANCE WITH THE MEMORANDUM DATED JULY 30, 1999, THE COURT GRANTS THE CHAPTER 13 TRUSTEE'S MOTION FOR MODIFICATION OF PLAN AFTER CONFIRMATION AND MELLON MORTGAGE COMPANY'S MOTION TO MODIFY ORDER OF MARCH 31, 1999 TO COMPEL DEBTORS' COUNSEL TO ESCROW THE NET SALE PROCEEDS PENDING FURTHER ORDER OF THIS COURT AND/OR TO COMPEL TURN OVER OF $50,668.35 FROM THE NET SALE PROCEEDS AND TO COMPEL CONVERSION TO A [CASE] UNDER CHAPTER 7 IN THE EVENT THAT THIS CASE BECOMES RIPE FOR DISMISSAL IN PART. THE COURT DENIES MELLON'S MOTION TO THE EXTENT MELLON SEEKS TO COMPEL CONVERSION IF THE CASE BECOMES RIPE FOR DISMISSAL. For Order, See Doc. No. 81.

Bankruptcy Court Docket Sheet, Docket Nos. 80–81.

## II.

Appellants' brief states the "Applicable Standard of Appellate Review" as follows:

> This Court reviews findings of fact on a clearly erroneous standard and legal bases on a de novo standard. *See In re Savage Inds.*, 43 F.3d 714, 719–20, 720 n. 8 (1st Cir.1994); *In re DN Assocs.*, 3 F.3d 512, 515 (1st Cir.1993); Fed. R.Bankr.P. 8013. In this appeal, the Court reviews the Modification Order on a de novo standard. *See In re Chrysler Fin. Corp. v. Nolan*, 234 B.R. 390, 392 (M.D.Tenn.1999) (on appeal, order granting motion to modify Chapter 13 plan reviewed on a de novo standard).

Brief of Appellants, II.B, at 2. This statement fails to identify clearly and explicitly the standard of review that applies to a district court's review of a discretionary determination by a bankruptcy judge that

the district court decides is not founded on an error of law and is not founded on a clearly erroneous finding of fact. Is such a decision of the bankruptcy judge to be affirmed unless determined to be an abuse of discretion? What is the legal test for determining whether the decision of the bankruptcy judge was an abuse of discretion?

### III.

Before considering other parts of the July 30, 1999 Memorandum of the Bankruptcy Court, I quote a passage in which the phrase "property of the estate" appears in a context that has figured prominently in the clashing arguments before the district court in this appeal.

A. The Chapter 13 Trustee

The Chapter 13 Trustee seeks an order compelling the Debtors to file an amended plan increasing the dividend to unsecured creditors to 100%. She observes that pursuant to the Sale Motion, after satisfaction of Mellon's secured claim and *liens against the Property,* the Debtors intend to retain *the proceeds of the sale,* which by her calculations would amount to approximately $95,000. Because of the absence of an explicit statement in the Sale Motion that the Debtors intend to continue making their plan payments, the Chapter 13 assumes that the Debtors believe that the sale completes their obligations under their plan. Seeking to extend the holding of *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), *she argues that it is improper for the Debtors to retain the proceeds from the sale* and receive a *windfall of close to $100,000, as, in her view, the increase in the value of the Property* should accrue to the benefit of creditors, not the Debtors.

Although *she* cites *In re Rangel,* 233 B.R. 191 (Bankr.D.Mass.1999), and *admits that the Property vested in the Debtors* pursuant to the confirmation order *and, thus, is no longer property of the estate,* the Chapter 13 Trustee also argues that the Debtors through the Sale Motion, seek to reduce both the time and amount of their payments on both secured and unsecured claims. Accordingly, *she argues that the Debtors are modifying their plan* and must comply with 11 U.S.C. § 1325. *See In re Martin,* 232 B.R. 29 (Bankr.D.Mass. 1999). She maintains that, if the Debtors are compelled to modify their plan, their plan as modified will satisfy the "best interests" and "best efforts" tests of § 1325 because the Debtors can pay Mellon's secured claim, pay a 100% dividend to unsecured creditors and still retain $44,610.75 in proceeds from the sale. She calculates that the total cost of the confirmed plan would have been $94,360.76 and that an additional $50,-668.35 is necessary to satisfy 100% of all unsecured claims, after crediting the Debtors for the amounts paid.

*In re Barbosa,* 236 B.R. 540, 544 (Bankr. D.Mass.1999) (footnotes omitted) (underscoring added).

### IV.

One might read the passage at the beginning of the last paragraph quoted above as meaning not only that the trustee "admits that the Property vested in the Debtors" under the confirmation order but also that the trustee "admits that ... [proceeds of the foreclosure sale are] no longer property of the estate,...."For the reasons stated here, I hold that if this is what the Bankruptcy Court's Memorandum means, it is an error of law.

The core dispute is over the meaning of the phrase, "property of the estate," as used in several different contexts. Does this phrase have the same meaning in all contexts that are relevant to this bankruptcy proceeding? If so, what is that meaning? I conclude that the answer to the first of these questions is YES and here explain that meaning and the reasoning by which I arrive at that meaning.

Ordinarily some consideration of context is essential to determining which among alternative meanings of a word, as reported in dictionaries commonly accepted as authoritative guides to use of English words, is the most appropriate selection for the meaning of that word in a passage of text in dispute.

The word "estate" has many meanings. *The Random House Dictionary of the English Language* (Second Edition Unabridged) (Copyright © 1987 by Random House, Inc.) lists nine numbered definitions, the second of which has subparts a–e. The first two are as follows:

1. a piece of landed property, esp. one of large extent with an elaborate house on it: *to have an estate in the country.* 2. *Law.* a. property or possessions. b. the legal position or status of an owner, considered with respect to property owned in land or other things. c. the degree or quantity of interest that a person has in land with respect to the nature of the right, its duration, or its relation to the rights of others. d. interest, ownership, or property in land or other things. e. the property of a deceased person, a bankrupt, etc., viewed as an aggregate.

*Id.* at p. 663.

A selection of definition number 1 for guidance in this case would tend to favor Appellants'–Debtors' position in this case. But this dictionary itself, in its structure of the array of nine alternatives, weighs against that selection by pointing out five different meanings in "Law," all of which are inconsistent to some extent with definition number 1. For example, definition 2a makes clear that this meaning of "estate" includes "possessions," which surely include articles of clothing and may include money. Definition 2b makes clear that interests in land, and not just the land and physical improvements affixed to it, are included in the meaning of "estate." Definitions 2c and 2d reinforce this meaning. Definition 2e, referring to the property of "a bankrupt," alongside "the property of a deceased person," strongly supports treating "property of the estate" as meaning "property of the estate in bankruptcy" because of the analogy to "property of the estate of a decedent."

Similar support for the meaning of "estate" that I have proposed above appears in *The American Heritage Dictionary of the English Language* (3d ed., Houghton Mifflin Company, Boston, New York, London, Copyright © 1992):

1. A landed property, usually of considerable size. 2. The whole of one's possessions, especially all the property and debts left by one at death. 3. *Abbr.* **est.** *Law.* The nature and extent of an owner's rights with respect to land or other property. . . .

*Id.* at p. 628 (definitions 4–8 omitted).

*Black's Law Dictionary* (7th ed., Bryan A. Garner, Editor in Chief, 1999) alerts us to an even larger array of definitions of phrases containing the word "estate" as well as four numbered definitions of the word "estate" standing alone. The full entry under the word "estate" is as follows:

1. The amount, degree, nature, and quality of a person's interest in land or other property. 2. All that a person or entity owns, including both real and personal property. 3. The property that one leaves after death; the collective assets and liabilities of a dead person. 4. A tract of land, esp. one affected by an easement.

"The old definitions of this word *[estate]* generally confine it to lands or realty. Thus, according to Lord Coke, '*state* or *estate* signifieth such inheritance, freehold, term for years, & c., as any man hath in *lands* or tenements.' *Co. Litt.* 345a. So Cowell defines it to be 'that title or interest which a man hath in *lands* or tenements,' and the same definition is given in the *Termes de la Ley.* And this limited sense of the word has been relied on, in argument, in some

cases.... But, according to the settled modern doctrine, the term *estate* is of much more extensive import and application, being indeed *genus generalissimum,* and clearly comprehending things personal as well as real; person as well as real estate." 1 Alexander M. Burrill, *A Law Dictionary and Glossary* 561 (2d ed. 1867).

*Id.* at p. 567.

■ I conclude that consideration of recognized dictionary definitions supports the commonsense inference one would draw from the language in context. The meaning of "estate" as used in the phrase "property of the estate" in the course of bankruptcy proceedings is "estate of the debtor(s)" in bankruptcy. This is the natural reading of this phrase regardless of whether it is a proceeding under Chapter 13, as in this instance, or instead under, for example, Chapter 11 or Chapter 7.

I find nothing in the record before me to support an inference that in this instance "estate" has a narrower meaning that is limited to "realty." Necessarily "realty" would need some modifier to make sense. To support Appellants'–Debtors' position in this case, something would need to be inferred about ownership of the "realty" or, more precisely, interests in the realty. For example, to serve Appellants'–Debtors' interests fully, the modifier would need to say, in effect if not in precisely these words, "something either owned entirely or in part by or formerly owned entirely or in part by the debtors incident to their holding formal legal title subject to a mortgage or conditional sale or other form of transaction through which they obtained money for purchase of an identified tract of realty or for improvements on that realty or for refinancing of indebtedness secured by that realty." Some such modification of the natural commonsense meaning of "estate" is an essential premise, unstated if not stated openly and candidly, of the position taken by the appellants-debtors in this appeal.

■ When "estate" is treated as having the straightforward meaning I have proposed above, then the cash (or equivalent in accounting entries in bank records, for example) received by the debtors as proceeds of a transfer of realty, after they are in bankruptcy, in return for their signing and delivering documents to the entity providing the cash (or its designee), comes to the debtors not as individuals freed of claims of creditors but as part of the bankruptcy estate that is being administered within the jurisdiction and under the orders of the bankruptcy court.

The law of the legal system (including property law of the states and federal bankruptcy law taken together as a working whole) provides for arrangements in which clear title can be conveyed to a purchaser of an identified tract of realty, barring all who in the future attempt to make either legal or equitable claims, of any kind, from disturbing the purchaser's free and clear enjoyment of all interests in the realty. The availability of such arrangements in the legal system serves many public policy interests, such as those that underlie the rights that bankruptcy law gives to debtors to make a fresh start, as well as those that underlie the certainty of land titles in the marketplace. Without such arrangements, the moment any kind of bankruptcy proceeding commences would be a moment of dramatic reduction of value of assets of the debtors. The reality is that this moment, and even the anticipation of this moment, reduces asset value to some extent. It reduces value less severely, however, if the policy-supported interpretation of "estate" I have proposed here is firmly maintained as the meaning objectively manifested by the legislative, rule-based, and precedent-based sources of authority a judge must respect as sources of guidance in reasoning to a decision in a particular case.

■ The record in this case does show that the trustee "admits that the Property vested in the debtors pursuant to the confirmation order." But "the Property" as

used in the context of this statement about the effect of the confirmation order is the realty. For the reasons explained immediately above, I rule, as a matter of law, that the *proceeds of the sale* of interests in the realty may become and continue to be "property of the estate" of the debtor(s) in bankruptcy even though the debtors rather than their estate in bankruptcy had title to the realty and never conveyed it to their estate in bankruptcy.

## V.

Parts I–IV above focus on some of the relevant passages from the record in this case. Other passages from the Bankruptcy's Court's Memorandum of July 30, 1999 that opposing counsel interpret quite differently in their briefs and arguments before this district court on appeal are quoted here for convenience of reference.

### I. INTRODUCTION

Two matters are before the Court: 1) the "Motion of the Chapter 13 Trustee for Modification of Plan after Confirmation" (the "Motion to Modify Plan"); and 2) Mellon Mortgage Company's "Motion to Modify Order of March 31, 1999 to Compel Debtors' Counsel to Escrow the Net Sale Proceeds Pending Further Order of this Court and/or to Compel Turn Over of $50,668.35 from the Net Sale Proceeds and to Compel Conversion to a Case under Chapter 7 in the Event that This Case Becomes Ripe for Dismissal" (the "Motion to Modify Order"). The Debtors filed Oppositions to both motions. The pleadings raise difficult issues as to what constitutes property of the estate in a Chapter 13 case in which a confirmed plan vests real property in the Debtors and the Debtors subsequently sell the real property for a price in excess of the value ascribed to the property in both a stipulation filed with the Court and the order of confirmation. In practical terms, the pleadings raise the issues of whether the Debtors, as a result of receipt of proceeds from the sale of investment property in excess of what is required to satisfy their confirmed Chapter 13 plan, may be compelled to increase the dividend to unsecured creditors from 10% to 100% as a condition of their discharge. The pleadings highlight the intricacies and inconsistencies of various sections of Chapter 13 of the Bankruptcy Code.

* * *

### A. Post–Confirmation Modification of the Plan

The plethora of issues in this case arise from the post-confirmation sale of the Debtors' real estate in the context of statutory provisions that are, for the most part, oriented toward the payment of creditors from projected future earnings of debtors who have regular monthly income. 11 U.S.C. §§ 101(30), 109(e). Thus, while 11 U.S.C. § 1303 expressly provides that "the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(1), of this title," sections such as § 1322, § 1325(b)(1)(B) § 1326, and § 1329 conform more closely with the notion of a "wage earner" plan. The sale of the Property precipitated the need for this Court to construe a number of Bankruptcy Code sections that "are difficult to reconcile," *Rangel,* 233 B.R. at 193, and perhaps even impossible to reconcile.

As a result of the sale of the Debtor's Property, the Chapter 13 Trustee seeks an order compelling the Debtors to modify their plan so as to apply the sale proceeds to both increase payments to unsecured creditors and to reduce the time for making such payments. *The Debtors, through their Sale Motion, implicitly seek to modify their plan to reduce the time for satisfying the claims of unsecured creditors.* Thus, sections 1329, 1306 and 1327(b) are immediately implicated.

Section 1329 permits the Chapter 13 Trustee, unsecured creditors and debt-

ors to request modification of a Chapter 13 plan prior to the completion of payments for three purposes:

> (1) [to] increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>
> (2) [to] extend or reduce the time for such payments; or
>
> (3) [to] alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

11 U.S.C. § 1329(a). Thus, facially, the Chapter 13 Trustee and the Debtors have standing to request modification of the existing plan.

\* \* \*

This Court adopts the approach taken by the Court in *Witkowski* [*In re Witkowski*, 16 F.3d 739 (7th Cir.1994) ] with the caveat that motions to modify cannot be used to circumvent the appeals process for those creditors who have failed to object to confirmation of a Chapter 13 plan or whose objections to confirmation have been overruled. Moreover, §§ 1327 and 1330 accord significant finality to confirmation orders in Chapter 13 cases. Thus, while *Witkowski* may be a correct statement of the law, [FN12] as a practical matter, parties requesting modifications of Chapter 13 plans must advance a legitimate reason for doing so, and they must strictly conform to the three limited circumstances set forth in § 1329. *See Witkowski*, 16 F.3d at 745–46.

The Court also determines to follow the courts in *Witkowski* and *Martin* with respect to percentage and pot plans. As Judge Hillman stated in *Martin*,

> "A percentage plan, by its very nature does not seem to constitute a plan by which the debtors will contribute all disposable income to the plan because the debtor may retain a por-

tion of disposable income if fewer than anticipated claims are filed."

\* \* \* \* \* \*

> A percentage plan may also fail to comply with the requirement found in § 1325(a)(3) that it be proposed in good faith. Any plan which would .allocate the windfall created by the failure of certain creditors to file timely proofs of claim to the debtor while unsecured creditors receive less than full payment on their claims does not demonstrate a "fundamental fairness to creditors."

*Martin*, 232 B.R. at 34 (quoting *Witkowski*, 16 F.3d at 746 n. 11). Because the order of confirmation in this case expressly provides that "[t]he term of the Plan is 60 months" and that "[t]he debtors shall pay to the chapter 13 trustee the sum of $1,486.00 per month for 59 months commencing November 1, 1996, and a balloon payment to the Trustee in the 60th month of the plan in the amount of $6,686.76," the Court finds that the plan is a pot plan. Although the "Summary of Disbursements to be Made under the Plan" indicates that a 10% dividend will be paid to the holders of allowed unsecured claims, "this simply describes the result upon completion of the Plan assuming that the claims filed equal the claims scheduled." *Martin*, 232 B.R. at 34. Accordingly, the Court rejects the Debtors implicit argument that payment of the 10% dividend to unsecured creditors set forth in their plan satisfies their obligations under Chapter 13, without regard to what may be indicated on amended Schedules I and J, assuming they decide to seek permission to reduce the time for payment of the dividend to unsecured creditors or the Chapter 13 Trustee's Motion to Modify Plan is granted.

**B. Post–Confirmation Property of the Estate**

To determine whether the Debtors can be compelled to modify their Chap-

ter 13 plan and to use the net proceeds from sale of the Property to satisfy the claims of their unsecured creditors, including Mellon, the Court must examine two issues: 1) whether the proceeds of the sale of the Property are property of the Chapter 13 bankruptcy estate; and 2) whether, regardless of the status of the proceeds as property of the estate, the Debtors must choose between payment of the unsecured claims in full from the sale proceeds and receipt of a discharge or retention of the sale proceeds. Resolution of these issues hinges upon the definition of property of the estate in 11 U.S.C. § 1306; the meaning of the vesting language in 11 U.S.C. § 1327(b); and whether the modification of a plan under § 1329 and application of the "best interest" test of § 1325(a)(4) permits a determination that the proceeds from sale of property that has vested in the Debtors is property of the estate for purposes of a modified plan. These issues raise the following question: *For purposes of a modification under § 1329, does the Court revisit the issue of vesting and property of the estate, thereby, in effect, annulling the revestiture of the Property in the Debtors pursuant to the order of confirmation dated September 23, 1998?*

\* \* \*

This Court must now determine the effect of the ruling in *Rangel* in circumstances such as those present here where the real property vested in the Debtors, but in selling the Property, *the Debtors obtained cash proceeds attributable, in part, to the appreciation in the value of the property, which can be viewed as income and which are sufficient to satisfy the claims of unsecured creditors in full.* Arguably, in accordance with *Rangel*, the Debtors would be entitled to keep the sale proceeds in excess of the amounts required to satisfy Mellon's secured claim because the Property vested in the Debtors pursuant to both § 1327(b) and the order of con-

firmation. In other words, the appreciation in value of the Property in the form of excess sale proceeds would belong to them free and clear of the claims of creditors pursuant to § 1327(c). Under this scenario, although the Debtors may be required to file amended Schedules I and J and an amended Chapter 13 plan and to satisfy both the best interests and best efforts tests if they wish to reduce the time for payment, *Rangel*, 233 B.R. at 198; *Martin*, 232 B.R. at 38, the Court's inquiries would end with respect to the Chapter 13 Trustee's Motion to Modify Plan and Mellon's Motion to Modify Order.

This result, however, is antithetical to the results that would be achieved in the absence of a confirmed plan that vested the Property in the Debtors. *Moreover, there is something unsavory about Chapter 13 Debtors "stripping down" a mortgage under § 506(a) and (d) and receiving the "super" discharge provided by § 1328(a) while walking away with substantial cash proceeds due to the appreciation in value of their Property, without amending their plan to satisfy the claims of their unsecured creditors.* While the Debtors emphasize the binding effect of their confirmed plan, *the Chapter 13 Trustee is focused on the unfairness of such a result, because, after all, the purpose of bankruptcy, regardless of the chapter, is to pay unsecured creditors at least what they would receive in a Chapter 7 liquidation. See* 11 U.S.C. §§ 1129(a)(7), 1225(a)(4) and 1328(b). Putting aside the various inconsistent Code sections, the problems created by the vesting language in § 1327(b) and the order of confirmation used in this and hairsplitting arguments about what constitutes property of the estate in Chapter 13, *the spectacle of the Debtors profiting while in bankruptcy is disconcerting and may be indicative of a bad faith manipulation of the Code.*

C. The Good Faith Requirement and Best Interest Test

When a plan is modified under § 1329, the Debtors' modified plan, among other requirements, must be proposed in good faith and must satisfy the best interests test. How is the best interest test applied? Under § 1325(a)(4), what is the effective date of the plan—the petition date; the date the debtor begins making payments; or the date of the modified plan? *Does the Court consider property of the estate at the commencement of the case, or only property that has not vested in the Debtors at the time of confirmation? What property values should be used*—the values attributable to the property at the commencement of the case or the current value? *With respect to the instant case, did the cash attributable to the appreciation in value of the Property vest in the Debtor pursuant to the confirmation order?* In applying the best interest test of § 1325(a)(4), *should the Court consider all property of the Debtors at the time of the proposed modification as "property to be distributed under the plan,"* regardless of whether it may have vested in the Debtors under § 1327? What is the relationship between § 1325(a)(4) and § 348(f)?

\* \* \*

. . . . The backdrop for the Court's decision is the recognition that a confirmed plan is a contract binding on creditors and that the discharge of debts is a privilege, not a right. Overriding all other concerns is the issue of good faith. *In view of congress's intent in enacting chapter 13 to encourage debtors to repay their debts to the best of their ability, it would be anomalous for this Court to determine that the Debtors can retain the excess proceeds from the sale of the Property without satisfying their unsecured claims.*

If the Debtors modify their plan to provide for full payment of unsecured claims, there is no question that the best interest test of § 1325(a)(4) would be satisfied. *If they modify their plan to reduce the time for paying unsecured creditors, without using the sale proceeds attributable to the appreciation in value of their Property to pay more than a 10% dividend to unsecured creditors, the Court finds that the best interest test of § 1325(a)(4) would not be satisfied, and, moreover, their "modified plan" would not be proposed in good faith. In other words, the Debtors would be engaged in a bad faith manipulation of the Bankruptcy Code, if they insist on retaining the excess sale proceeds and obtaining the broad discharge afforded by § 1328(a).*

## V. CONCLUSION

In accordance with the foregoing, the Court hereby grants the Chapter 13 Trustee's Motion to Modify Plan and Mellon's Motion to Modify Order in part. The Court denies Mellon's Motion to the extent Mellon seeks to compel conversion if the case becomes ripe for dismissal.

*In re Barbosa*, 236 B.R. at 541–556 (footnotes omitted) (underscoring added).

## VI.

The passages I have underscored, in the quoted segments of the July 30, 1999 Memorandum of Bankruptcy Judge Feeney, support appellants' argument, before this court on appeal from her Order of July 30, 1999, that she chose not to reason her decision on the basis that proceeds of the foreclosure sale delivered into the hands of the debtors were property of the estate in bankruptcy. Instead, Judge Feeney chose a more intricate and complex path to the outcome of granting the trustee's motion and denying in part Mellon's motion. I conclude, nevertheless, that her Order was correct and should be affirmed, though on somewhat different reasoning.

## VII.

The reasoning of Bankruptcy Judge Feeney included some discrete findings that are clearly supported by evidence be-

fore her and not affected in any way by any error of law. I will identify these findings, first, and then consider their legal significance on this appeal.

■ In Part IV.A of her Memorandum of July 30, 1999, Bankruptcy Judge Feeney finds that the Plan proposed by debtors and included in the order of confirmation "is a pot plan." She explains:

> Because the order of confirmation in this case expressly provides that "[t]he term of the Plan is *60* months" and that "[t]he debtors shall pay to the Chapter 13 trustee the sum of *$1,486.00* per month for 59 months commencing *November 1, 1996,* and a balloon payment to the Trustee in the 60th month of the plan in the amount of $6,686.76," the Court finds that the plan is a pot plan.

*In re Barbosa,* 236 B.R. at 548. For the reasons stated in her Opinion, I conclude that this finding of fact is well supported by the record before Judge Feeney and not in any way legally vulnerable. I conclude that under the applicable standard of review I must respect it.

When I consider this finding of fact along with my determination as a matter of law that proceeds of the sale of the Property were property of the estate of the bankruptcy debtors in this case, I conclude that I must affirm the Bankruptcy Court's Order of July 30, 1999.

Because of the compelling conclusion that the Order must be affirmed on this ground, I conclude that it is unnecessary and indeed inappropriate for me to express a view on whether Bankruptcy Judge Feeney was correct in adopting "the approach taken" by the Court of Appeals for the Seventh Circuit in *In re Witkowski,* 16 F.3d 739 (7th Cir.1994). That is an issue more appropriately left to initial decision by the Court of Appeals for the First Circuit, or to a lower court in this circuit in a context in which it is essential to an outcome. For this reason, I do not address that issue further in this Opinion.

This conclusion is further supported by additional findings and conclusions of Judge Feeney.

> The Debtors, through their Sale Motion, implicitly seek to modify their plan to reduce the time for satisfying the claims of unsecured creditors.

*In re Barbosa,* 236 B.R. at 545 (footnote omitted).

> If they modify their plan ..., the Court finds that the best interest test of § 1325(a)(4) would not be satisfied, and, moreover, their "modified plan" would not be proposed in good faith. In other words, the Debtors would be engaged in a bad faith manipulation of the Bankruptcy Code, if they insist on retaining the excess sale proceeds and obtaining the broad discharge afforded by § 1328(a).

*Id.,* 236 B.R. at 556.

In view of these findings made by Judge Feeney and the support for them in the record, taken together with my determination as a matter of law that the part of the proceeds of the Property sale at foreclosure that came into the debtors' hands was property of the estate, Judge Feeney's Order from which this appeal was taken was well supported by her findings of fact, and her making that Order was not an abuse of discretion.

## ORDER

For the foregoing reasons, it is ORDERED:

The Clerk is directed to enter forthwith on a separate document a Final Judgment as follows:

For the reasons stated in the Opinion of January 12, 2000, it is ORDERED:

The Bankruptcy Court's Order of July 30, 1999, from which this appeal was taken, is AFFIRMED.