# United States Court of Appeals
## For the First Circuit

No. 00-1221

MARCELINO BARBOSA; MARIANA BARBOSA,

Appellants,

v.

DOREEN SOLOMAN; MELLON MORTGAGE COMPANY,

Appellees.

APPEAL FROM THE UNITED STATES DISTRICT

COURT FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Robert E. Keeton, U.S. District Judge]

Before

Torruella, Chief Judge,

Selya, Circuit Judge,

and Casellas,* District Judge.

Anthony L. Gray, with whom Joseph F. Ryan, and Brown, Rudnick, Freed & Gesmer, P.C. were on brief for appellants.
Lynne F. Riley, with whom Doreen B. Soloman, Office of the Chapter 13 Trustee, was on brief for Doreen B. Soloman.
Richard S. Hackel, with whom Samuel D. Shiro was on brief, for appellee Mellon Mortgage Company.

December 21, 2000

*of the District of Puerto Rico, sitting by designation.

**CASELLAS,** <u>District Judge</u>. The controversy in this appeal arises out of the not-so-infrequent scenario where, after the confirmation of a bankruptcy plan under Chapter 13, but before the case is closed or converted to Chapter 7, the debtors sell property of the estate which "vested" in them "free and clear of any claim or interest of any creditor" pursuant to the provisions of 11 U.S.C. § 1327.[1] The distribution of the proceeds from the sale of such property is usually controversial; especially when, as here, the property sold has considerably appreciated in value and as a consequence, the debtors received substantial profits which they intend to keep to themselves.[2] On the other hand, the debtors' unsecured creditors and the Chapter 13 Trustee moved to compel the

_____

[1] 11 U.S.C. § 1327 provides, in relevant part:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.
(b) Except as otherwise provided in the plan or the order confirming the plan, *the confirmation of a plan vests all of the property of the estate in the debtor*.
(c) Except as otherwise provided in the plan or in the order confirming the plan, *the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan*. (Emphasis added).

[2] After payment in full of all secured bankruptcy claims, plus interest, and all closing costs, taxes, insurance premiums and other amounts, there remains $50,668.35 in excess proceeds.

-2-

debtors to amend their bankruptcy plan in order to distribute the proceeds from the sale to the unsecured creditors.

## I.  BACKGROUND

The property sold in this particular case consists of a two-family building retained by the debtors for investment purposes ("the Property"), which was subject to a lien in the amount of $114,000 held by Mellon Mortgage Company ("Mellon").  On May 5, 1997, Mellon entered into a stipulation with the Debtors, Marcelino and Mariana Barbosa ("the Debtors"), whereby they agreed that the market value of the Property was $64,000 ("the Stipulation").  Therefore, Mellon's secured claim was "stripped down" by $50,000, from $114,000 to $64,000.  The Stipulation also provided for payment in full of the stripped-down secured claim plus interest.  The balance, now unsecured, would be repaid "at a rate of not less than 10%."  As a guarantee, Mellon "retain[ed] its lien in full until successful completion of the repayment plan."

On July 17, 1998, the Debtors filed their repayment plan, in consonance with the terms of the Stipulation.  It was confirmed by the bankruptcy court on September 23, 1998.  The Plan provided, among other things, the following: (1) full payment of Mellon's stipulated secured claim plus interest at a 9% annual interest rate; (2) prepayment of Mellon's stipulated secured claim at any time, without premium or penalty; (3) payment of a dividend to unsecured creditors

equal to 10% of the amount of their claims; and (4) reduction of the monthly plan payment, in the event that Mellon's secured claim was prepaid.

The bankruptcy court's Confirmation Order approved the Debtors' Plan and summarized the disbursements to be made under it. In addition, it acknowledged the modification of Mellon's secured claim as explained above. Regarding the unsecured claims, it stated that they "shall be paid [at] a dividend of not less than 10%." Finally, in compliance with 11 U.S.C. § 1327, the Confirmation Order provided that: "[T]he provisions of the confirmed Plan bind the debtors and all creditors; *the confirmation of the Plan vests all property of the estate in the debtors; and all property vesting in the debtors is free and clear of any claim or interest of any creditor, except as provided in the Plan or this order*." (Emphasis added).

After the entry of the Confirmation Order, the Debtors sought leave from the bankruptcy court to sell the Property free of liens or encumbrances pursuant to 11 U.S.C. §§ 1303 and 363. Leave was obtained and accordingly, the property was sold for $137,500 to a good faith purchaser. The bankruptcy court's order approving the sale (the "Sale Order") provided for payment in full of Mellon's secured claim pursuant to the Plan and the Confirmation Order; while the balance of the proceeds were to be held in escrow by the Debtors'

-4-

counsel "until the earlier of (a) an agreement by and between the Debtors and ... the Chapter 13 Trustee ... regarding disbursement of such proceeds, and (b) disposition by the Court, by a final order, adjudicating a motion filed by the Chapter 13 Trustee seeking an amendment to the Plan...."

The Debtors and the Chapter 13 Trustee were unable to reach an agreement for the distribution of the proceeds. Therefore, the Trustee moved to compel the Debtors to modify their Plan in order to pay the excess of the proceeds to the Debtors' unsecured creditors.[3] The end result under the Trustee's proposed plan would be that the dividend paid to unsecured creditors would increase from 10% to 100%.

The Debtors opposed the Trustee's motion. On July 30, 1999, after a hearing, the bankruptcy court entered a Modification Order granting the Trustee's motion and holding that the Debtors were compelled to amend their Plan in order to distribute the proceeds to the unsecured creditors. In re Barbosa, 236 B.R. 540 (Bankr.D.Mass. 1999). The court reasoned that since the Debtors' bankruptcy plan did not provide for prepayment of the unsecured claims, the Debtors, through their Sale Motion, were "implicitly seek[ing] to modify their plan to reduce the time for satisfying the claims of unsecured

_____

[3]   Mellon joined the Trustee's efforts by filing a separate motion.

-5-

creditors." Id. at 545.[4]  Accordingly, the court rejected Debtors'

implied amendments to reduce the time of payment to the unsecured

creditors and satisfy their claims by paying the 10% dividend,

without any regard to the change in circumstances. Id. at 548-49,

556.  In addition, the bankruptcy court found that the Debtors'

intention to keep the proceeds of the sale, while paying the 10%

dividend provided by the Plan to the unsecured creditors, failed to

meet both the good faith requirement and the best-interests-of-the-

creditors test of 11 U.S.C. §§ 1329[5] and 1325(a)[6] in order to modify

---

[4]  The court also ruled that pursuant to 11 U.S.C. § 1329, the Trustee had standing to seek modification of the plan, and that "[e]ven if this Court were to conclude that the Chapter 13 Trustee must show a substantial change in circumstances, the Court observes that the Chapter 13 Trustee could satisfy that standard [given that] [a]lthough the Debtors contemplated the sale of their Property in their Chapter 13 plan, the sales price was more than double the stipulated value of Mellon's secured claim." In re Barbosa, 236 B.R. at 547 n. 8.

[5]  Section 1329(a) of the Bankruptcy Code provides for the modification of a confirmed Chapter 13 plan upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, for the following limited modifications:

   (1) increase or reduce the amount of payments on claims of
   a particular class provided for by the plan;
   (2) extend or reduce the time for such payments; or
   (3) alter the amount of the distribution to a creditor whose
   claim is provided for by the plan to the extent necessary to
   take account of any payment of such claim other than under
   the plan.

11 U.S.C. § 1329(a).

(continued...)

a confirmed plan, given the substantial and unanticipated change in the Debtors' financial circumstances. In re Barbosa, 236 B.R. at 552-56.

Further, the bankruptcy court noted that although pursuant to 11 U.S.C. § 1327(b), the Property sold vested in the Debtors free and clear of any claim from the creditors (accord In re Rangel, 233 B.R. 191 (Bankr.D.Mass. 1999)), the result in this case by allocating the appreciation of property, which the court characterized as windfall profits, to the Debtors rather than to the unsecured creditors "is antithetical to the results that would be achieved in the absence of a confirmed plan that vested the Property in the Debtors." In re Barbosa, 236 B.R. at 551. The court continued:

> Moreover, there is something unsavory about Chapter 13 Debtors 'stripping down' a mortgage under § 506(a) and (d) and receiving the 'super' discharge provided by § 1328(a) while walking away with substantial cash proceeds due to the appreciation in value of their Property,

---

[5](...continued)
Section 1329(b) of the Code provides in turn, that a proposed plan modification must meet the requirements of sections 1322(a), 1322(b), 1323(c) and 1325(a) of the Code.

[6]
Section 1325(a) provides in the pertinent part that a bankruptcy plan may only be confirmed if "[it] has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). While "the value, as of the effective date of the plan, of property to be distributed under [it] on account of each allowed unsecured claim" must be "not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of [the Code] on such date." 11 U.S.C. § 1325(a)(4).

> without amending their plan to satisfy the
> claims of their unsecured creditors... Putting
> aside the various inconsistent Code sections,
> the problems created by the vesting language in
> § 1327(b) and the order of confirmation used in
> this case, and hairsplitting arguments about
> what constitutes property of the estate in
> Chapter 13, the spectacle of the Debtors
> profiting while in bankruptcy is disconcerting
> and may be indicative of a bad faith
> manipulation of the Code.

Id. at 551-52. Accordingly, the bankruptcy court held that the Debtors were required to amend their plan as requested by the Trustee to provide for full compensation to the unsecured creditors. Id. at 556.

On appeal, the district court affirmed the bankruptcy court's decision and order. Barbosa v. Solomon, 243 B.R. 562 (D. Mass. 2000). However, it used a different rationale. It found that the central issue was the meaning of the phrase "property of the estate" as used in the various sections of the Bankruptcy Code. Id. at 565. It then noted that a reading of the bankruptcy court's memorandum opinion might give the impression that the Trustee "admits that ... [proceeds of the foreclosure sale are] no longer property of the estate...." Id. However, in the district court's opinion, "if th[at] is what the bankruptcy court's Memorandum means, it is an error of law." Id. Rather, the district court's interpretation of the concept "property of the estate" as used by section 1327 of the

Code, vested title to the realty in the Debtors at confirmation, but not the proceeds of the sale. Id. at 567-68. The district court concurred with the bankruptcy court in all other aspects and therefore, it affirmed the judgment below.

The Debtors appealed from that decision and raise various issues. In particular, they contend that the district court erred in ruling that the proceeds were part of the bankruptcy estate, based on 11 U.S.C. §§ 1327 and 541(a)(6). They rely on the vesting language of section 1327 of the Code and the Confirmation Order for the proposition that Mellon forfeited any claim to the excess proceeds from the property when it entered into the Stipulation, and that such forfeiture became effective when the Confirmation Order was entered.

Second, Debtors argue that the bankruptcy and district courts erred by improperly applying 11 U.S.C. § 1329 by finding that they had implicitly sought a modification of the Plan through the motion for confirmation of sale.

## II. ANALYSIS OF APPLICABLE LAW

Since this case presents primarily questions of law, this Court's review of the bankruptcy and district court's decisions is *de novo*. In re Savage Industries, Inc., 43 F.3d 714, 719 n. 8 (1st Cir. 1994); In re DN Associates, 3 F.3d 512, 515 (1st Cir. 1993). However, any findings of fact by the lower courts are reviewed on a clearly erroneous standard. In re Savage Indus., 43 F.3d at 720.

**A.** **The Confirmed Plan in a Chapter 13 Bankruptcy Case.**

Section 1327(b) of the Bankruptcy Code states that "the confirmation of a plan vests all property of the estate in the debtor." 11 U.S.C. § 1327(b). In addition, section 1327(c) adds that such vesting "is free and clear of any claim or interest of any creditor provided for by the plan." Id. The language used by the bankruptcy court in its Confirmation Order was in consonance with these Code provisions.

The Debtors argue that in defining the concept "property of the estate" the district court ignored various sections of the Bankruptcy Code; particularly section 541(a)(6) which establishes that the concept "property of the estate" includes proceeds "of or from property of the estate." 11 U.S.C. § 541(a)(6). Therefore, the Debtors argue that section 1327 of the Code, combined with section 541, vested in them the Property along with its proceeds "free and clear of any claim or interest of any creditor." 11 U.S.C. § 1327(c).

However, in direct contraposition with the Debtors' intended interpretation is section 1306(a) of the Bankruptcy Code, which defines the concept "property of the estate" within a Chapter 13 bankruptcy thus:

> Property of the estate includes, in addition to
> the property specified in section 541 of this
> title:

> (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and
> (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

11 U.S.C. § 1306(a). While this section does extend the application of section 541 to cases filed under Chapter 13, it does so within a specific context. In particular, the status of the property of the estate after the confirmation of a Chapter 13 plan is a controversial issue in itself. See Russell G. Donaldson, Continued Existence of Bankruptcy Code Chapter 13 Estate After Confirmation of the Chapter 13 Plan, 126 ALR Fed. 665 (1995)(Supp. 1999); David B. Wheeler, Whose Property Is It Anyway? 18-NOV Am. Bankr. Inst. J. 14 (1999)(brief review and analysis of the four different approaches currently used by the bankruptcy courts to harmonize §§ 1327 and 1306 of the Bankruptcy Code); Thomas E. Ray, Post-Petition Claims and the Automatic Stay in Chapter 13, 19-FEB Am. Bankr. Inst. J. 12 (2000)(reference to the same variety of interpretations given by the bankruptcy courts to §§ 1327 and 1306 of the Code); Vickie L. Vaska, Commentary: Property of the Estate After Confirmation of a Chapter 13 Repayment Plan: Balancing Competing Interests, 65 Wash. L. Rev. 677 (July 1990); see also In re Reynard, 250 B.R. 241, 246-47

(Bankr.E.D.Va. 2000); In re Holden, 236 B.R. 156, 160-63 (Bankr.D.Vt. 1999); In re Rangel, 233 B.R. at 198.

By stating that the bankruptcy estate continues to be replenished by post-petition property until the case is closed, dismissed, or converted under chapter 7, 11 or 12 of the Bankruptcy Code, section 1306(a) is actually providing for the continued existence of the bankruptcy estate until the earliest of any of the above-mentioned events occur. The meaning of the "vesting" language of section 1327(b) within this context has been explored far and wide throughout the nation. In fact, the bankruptcy court noted that sections 1306(a) and 1327(b) of the Code "are difficult to reconcile" in this regard. In re Barbosa, 236 B.R. at 545, quoting In re Rangel, 233 B.R. at 193.

Some courts have interpreted section 1306(a) as actually providing for the continuation of the bankruptcy estate until the earliest of any of the above-mentioned events. See Security Bank of Marshall Town v. Neiman, 1 F.3d 687 (8th Cir. 1993). Still others have held that the confirmation order terminates the estate altogether, re-vesting all property of the estate in the debtor. In re Olivier, 193 B.R. 992 (Bankr.N.D.Ga. 1996); In re Petruccelli, 113 B.R. 5 (Bankr.S.D.Cal. 1990). A third approach, called "the-middle-of-the-road approach", stands for the proposition that the estate continues to exist only with regard to property used to fund the

plan. In re Leavell, 190 B.R. 156 (Bankr.E.D.Va. 1995); In re Ziegler, 136 B.R. 191 (Bankr.N.D.Ill. 1992). All of these positions have been criticized; the first two for overly emphasizing either section 1306 or 1327, rendering the opposing section meaningless, Wheeler, supra at 14, while the third approach is criticized for involving a subjective analysis not contemplated, or provided for, by the Code. Id.; see also Donaldson, supra, 126 ALR Fed. 665 §§ 2-5.

However, a fourth line of cases has held that by virtue of sections 1327(b)-(c), property of the estate at the time of confirmation vests in the debtors free of any claims from the creditors. The estate does not cease to exist however, and it continues to be funded by the Debtors' regular income and post-petition assets as specified in section 1306(a). In re Reynard, 250 B.R. at 247; In re Trumbas, 245 B.R. 764, 766 (Bankr.D.Mass. 2000); In re Holden, 236 B.R. at 162-63; In re Rangel, 233 B.R. at 198.

Many commentators consider this approach to be the best, since it gives meaning to both sections 1306 and 1327, without the subjective analysis required by the middle-of-the-road approach. E.g. Wheeler, supra. It was also the approach followed by the bankruptcy court in this case. Because we think that this approach has a logical consistency that harmonizes two apparent inconsistent sections, we hereby adopt it. However, we note that this rule cannot be applied in an inflexible manner, for in spite of the "vesting"

-13-

provided by section 1327 of the Code, until all payments due under the plan are made, both the trustee and the unsecured creditors have an interest in the preservation of the debtor's financial situation, and in the extension of the ability-to-pay standard to future situations under the plan.  In this particular case, "receiving proceeds has also altered the debtor's financial circumstances", which brings into play § 1329 of the Code. In re Suratt, 1996 WL 914095, *1 (D.Or. 1996).[7]

B.  **Modification of a Confirmed Chapter 13 Plan.**

Section 1329 of the Code provides that a confirmed plan may be modified at the request of the debtor, the trustee, or the holder of an allowed unsecured claim in order to "increase or reduce

---

[7]  In In re Suratt, 1996 WL 914095 at *1, the bankruptcy court rejected debtor's argument that by "vesting" the property on him upon confirmation, § 1327 operated to exclude the trustee and the unsecured creditors from partaking in the post-confirmation sale proceeds of former estate property.  The court noted that:

The logical extension of the debtor's argument is ... that there must be a provision in all Chapter 13 plans requiring post-confirmation sale proceeds from property originally part of the estate to be paid to creditors, in order to preclude the debtor from receiving those funds. There is no such requirement in the Bankruptcy Code, nor has any court imposed such a requirement. 11 U.S.C. § 1329(a) is intended, in part, to provide the protection the debtor claims is missing.  Its purpose is to protect creditors' rights to a debtor's increased income, including from proceeds from the sale of property that has appreciated in value, post-confirmation.

Id. at *3.

the amount of payments on claims of a particular class provided for by the plan; [or to] extend or reduce the time for such payments..." 11 U.S.C. § 1329(a)(1,2). Any such post-confirmation modifications shall comply with sections 1322(a)-(b)[8], 1323(c)[9], and 1325(a)[10] of the Bankruptcy Code.

11 U.S.C. § 1329(b)(1).

The Debtors argue that both the bankruptcy court and the district court erred in applying section 1329 of the Code to allow a modification of the confirmed plan at the request of the Trustee and Mellon without their showing a substantial and unanticipated change

---

[8]
Section 1322(a) of the Code establishes the requirements that must be met by a bankruptcy repayment plan in order to be approved by the court. Section 1322(b) on the other hand, enumerates all permissible provisions which can be included in a bankruptcy repayment plan. 11 U.S.C. § 1322(a)-(b).

[9]
Section 1323(c) provides that: "Any holder of a secured claim that has accepted or rejected the plan is deemed to have accepted or rejected, as the case may be, the plan as modified, unless the modification provides for a change in the rights of such holder from what such rights were under the plan before modification, and such holder changes such holder's previous acceptance or rejection." 11 U.S.C. § 1323(c).

[10]
Section 1325(a) of the Code provides, in the pertinent part, that the courts "shall confirm a plan if" (1) it complies with all applicable provisions of the Code; (2) it "has been proposed in good faith and not by any means forbidden by law"; (3) the value of property to be distributed under the plan on account of all allowed unsecured claims is not less than what would be paid under a chapter 7 liquidation; and (4) the debtor is able to comply with the plan. 11 U.S.C. § 1325(a)(1), (3)-(4), (6).

in the Debtors' financial circumstances from the time of confirmation. They argue that the Property's sale was contemplated by the parties at the time of entering into the Stipulation and by the Court when it confirmed the Plan. Therefore, they aver that the modification requested by the Trustee and Mellon is precluded by *res judicata*. For that purpose, they allege that the sale was not an unanticipated event, and that the appreciation in value of the property was foreseeable. They do not dispute however, nor can they given the facts, that the change in the Debtors' financial circumstances is substantial.

From the start, we note that Debtors' arguments are not grounded on the specific provisions of the Code; since section 1329 does not in itself establish a criterion for granting a modification, other than the plan as modified must comply with all applicable provisions of the Code. 11 U.S.C. § 1329(b), incorporating by reference 11 U.S.C. § 1325(a). This means that the Plan as modified must be proposed in good-faith. 11 U.S.C. § 1325(a)(3). Also, it must comply with the "best-interests-of-the-creditors" test and the "ability-to-pay" standard. 11 U.S.C. § 1325(a)(4-6). However, the Code says nothing about the applicability of the doctrine of *res judicata* or the threshold requirement of unanticipated and substantial change in the debtor's financial circumstances. These are doctrines of judicial origin. See, e.g., In re Witkowski, 16 F.3d

-16-

739, 746 (7th Cir. 1994)("The clear and unambiguous language of §
1329 negates any threshold change in circumstances requirement and
clearly demonstrates that the doctrine of *res judicata* does not
apply."); In re Than, 215 B.R. 430, 435 (B.A.P.9th Cir 1997)("The
unanticipated, substantial change test is judicial gloss to § 1329,
... and the standard was seriously questioned by the Seventh
Circuit's 1994 Witkowski opinion."); In re Powers, 202 B.R. 618, 622
(B.A.P.9th Cir. 1996)("[W]e decline to hold that the change must be
substantial and unanticipated as suggested by various cases in this
circuit.  The plain language of § 1329 simply does not support a
change in circumstances as a prerequisite to modification."); In re
Euler, 251 B.R. 740, 744 (Bankr.M.D.Fla. 2000)(recognizing that
section 1329 "is silent as to whether the court should impose any
conditions on a modification ... other than those provided by §
1329(b)."); In re Fitak, 92 B.R. 243, 249 (Bankr.S.D.Ohio 1988),
aff'd 121 B.R. 224 (S.D.Ohio 1990)("While the legislative history
indicates that a post-confirmation modification should be ordered
pursuant to § 1329(a) upon a showing of changed circumstances which
affect a debtor's ability to pay, the case law suggests that the
doctrine of *res judicata* limits the scope of appropriate post-
confirmation modifications.").

Some of the stated grounds for the application of the
doctrine of *res judicata* within the context of a modification sought

-17-

pursuant to § 1329, are: (1) the "awkward" application of section 1329, <u>In re Euler</u>, 251 B.R. at 744, <u>quoting</u> <u>In re Perkins</u>, 111 B.R. at 673 ("Unfortunately... section 1329 is 'somewhat awkward in concept and application."); (2) the apparent inconsistency of sections 1321 and 1329 of the Code; while the first provides that only the debtor shall file a plan, the second provides standing to the trustee and the unsecured creditors to seek to modify it after confirmation, <u>id.</u> at 745-46; (3) the "little, if any, guidance as to the standard to be applied by a bankruptcy court in determining whether a request for a post-confirmation modification of a Chapter 13 plan should be granted," <u>In re Fitak</u>, 92 B.R. at 248; (4) the legislative history of § 1329, <u>In re Euler</u>, 251 B.R. at 746; (5) the case law, <u>e.g.</u> <u>In re Fitak</u>, 92 B.R. at 249, <u>citing</u> <u>In re Moseley</u>, 74 B.R. 701, 799-800 (Bankr.C.D.Cal. 1987)[11], <u>Anaheim Savings & Loan Ass'n v. Evans (In re Evans)</u>, 30 B.R. 530, 531 (B.A.P.9th Cir. 1983)[12]; and (5) the finality accorded to the confirmed plan, <u>In re</u>

---

[11]

    <u>In re Moseley</u>, <u>supra</u>, makes a distinction between motions to modify a confirmed plan filed by the debtor, and motions to modify filed by the trustee or the unsecured creditors. The debtor may file motions to modify liberally, "on a proper showing of changed circumstances"; 74 B.R. at 799; while "a creditor may move to modify a plan adversely to a debtor after confirmation only upon a showing of a post-confirmation default by the debtor, or that the circumstances have changed since confirmation." <u>Id.</u> As to everything else, the confirmed plan is *res judicata*. <u>Id.</u>

[12]

    (continued...)

Euler, 251 B.R. at 746. Of all these factors, the need to accord a degree of finality to the confirmation order is one of the most weighty for some courts. See, e.g., Witkowski, 16 F.3d at 745, and cases cited therein.

However, while the doctrine of *res judicata* has been applied by some courts in this context, e.g. In re Arnold, 869 F.2d 240, 243 (4th Cir. 1989)("The doctrine of *res judicata* bars an increase in the amount of monthly payments only where there have been no unanticipated, substantial changes in the debtor's financial situation."); In re Suratt, 1996 WL 914095 at *2 (D.Or. 1996)("The doctrine of *res judicata* limits post confirmation modifications to cases in which the change in a debtor's ability to pay was unanticipated at the time of confirmation."); In re Solis, 172 B.R. 530, 532 (Bankr.S.D.N.Y. 1994) quoting 5 L.King, Collier on Bankruptcy ¶ 1329.01 (15th ed. 1994) ("A trustee's application 'should be limited to situations in which there has been a substantial change in the debtor's income or expenses that was not anticipated at the time of the confirmation hearing.'"); In re Fitak, 92 B.R. at 250 ("[T]he doctrine of *res judicata* operates as a

---

12(...continued)
Anaheim Savings & Loan Ass'n v. Evans, supra, states while discussing the effect of a confirmation pursuant to section 1327, that: "An order confirming a Chapter 13 plan is *res judicata* as to all justifiable issues which were or could have been decided at the confirmation hearing." 30 B.R. at 531.

limitation on the ability of parties to obtain a post-confirmation modification under § 1329(a) based upon unanticipated changed circumstances."), it is by no means the uniformly accepted norm.

Many other courts have ruled that section 1329(a) allows the parties an absolute right to request a modification (although a modification will not necessarily be granted). Witkowski, 16 F.3d at 745; In re Powers, 202 B.R. at 622 ("Although a party has an absolute right to request modification between confirmation and completion of the plan, modification under § 1329 is not without limits."); In re Than, 215 B.R. at 436 (same); In re Trumbas, 245 B.R. at 767 (following In re Barbosa, 236 B.R. at 548, and Witkowski, supra); In re Meeks, 237 B.R. 856, 859-60 (M.D.Fla. 1999)("[T]he Debtors need not demonstrate a substantial, unanticipated change in circumstances in order to modify their confirmed chapter 13 plan. However, neither can Chapter 13 debtors simply modify their plans willy nilly."); In re Laye, 1994 WL 905759, *2 (Bankr.N.D.Ill. 1994)(following Witkowski, supra). This approach is based on the clear language of the statute. In re Witkowski, 16 F.3d at 746; In re Powers, 202 B.R. at 622 ("[W]e decline to hold that the change [under § 1329] must be substantial and unanticipated as suggested by various cases in [the Ninth Circuit]. The plain language of § 1329 simply does not support a change in circumstances as a prerequisite to modification.") Also, it acknowledges that section 1329 does provide a criterion for

granting a modification. In re Witkowski, 16 F.3d at 745-46.  First, "modifications are only allowed in [the] three limited circumstances" provided by the statute. Id. at 745.  Second, as provided by § 1329(b)(1) of the Code, "a modified plan is only available if §§ 1322(a), 1322(b), 1325(a) and 1329(c) of the bankruptcy code are met." Id.  Third, a modification may only be proposed in good faith. Id. at 746.[13]  Fourth, "all proposed modifications need not be approved and in practice not all modifications are approved." Id. Moreover, the statutory framework is clear in allowing post-confirmation modifications, a feature that is incongruent with the application of the doctrine of *res judicata.* Id. at 745.[14]

The legislative history of section 1329(a) is not conclusive on this issue either, and if anything, it supports the inference that *res judicata* should not be applied.  Section 1329(a) was amended in 1984 to provide standing to the trustee and the holders of unsecured claims to move to amend the confirmed bankruptcy repayment plan. Consumer Credit Amendments, Section 319, Title III of

---

[13]

Specifically, "lack of good faith can be shown by manipulation of code provisions." In re Witkowski, 16 F.3d at 746.

[14]

The Witkwoski court stated: "The common-law principle of *res judicata* ... does not apply when a statutory purpose to the contrary is evident." In re Witkowski, 16 F.3d at 744 (internal quotations omitted).  It then noted that "the statutory framework of the Bankruptcy Code plainly assumes the possibility of modifications of bankruptcy plans after they are confirmed."  Id. at 745.

-21-

the Bankruptcy Amendments and Federal Judgeship Act of 1984

("BAFJA"), Publ. L. No. 98-353; 8 Collier on Bankruptcy ¶ 1329.03

(Lawrence P. King, chief ed., 15th ed. 2000). Prior to the

amendment, only the debtor was authorized to request a modification

of the plan. Id.; see also William L. Norton Jr., Bankruptcy Law and

Practice 2d, Bankruptcy Code 1270, eds.' comm. (1998-1999). However,

Congress saw fit to allow the trustee and holders of unsecured claims

to seek an amendment to the confirmed plan in order to carry the

ability-to-pay standard forward in time, allowing upward or downward

adjustment of plan payments in response to changes in the debtor's

financial circumstances which affect his/her ability to make

payments. See Oversight Hearings on Personal Bankruptcy Before the

Subcommittee on Monopolies and Commercial Law of the Committee on the

Judiciary, House of Representatives, 97th Cong., 1st and 2nd Sess. 22-

23 (1981-1982).[15]

---

[15]

See Statement of Professor Vern Countryman:

Since plans are confirmed on the basis of projections of
future income of the debtor, any subsequent change in the
debtor's income, either an increase or a reduction, during
the term of the plan will result in an excessive or an
inadequate commitment of his disposable income under the
plan. Because we believe that, in exchange for the
advantages of Chapter 13 over Chapter 7, the debtor should
commit his disposable income for the term of the plan, we
propose a new section 1329(d) to deal with that problem.
While this provision will permit the debtor to seek a
modification of the plan in the event of a reduction in

(continued...)

There was an indication at the Congressional Oversight Hearings on Personal Bankruptcy that the standing conferred to the trustee and the unsecured creditors would serve to accommodate any changes in the financial circumstances of the debtor (either adversely or favorably), which substantially affect his ability to make future payments under the plan. Oversight Hearings, supra, at 215-216, 221-222 (1981-1982) (statement of the Hon. Conrad K. Cyr, Bankruptcy Judge for the District of Maine, speaking on behalf of the National Bankruptcy Conference and the National Conference of Bankruptcy Judges); Arnold & Porter, BANKR84, Hearings(21). However, the reference to a substantial change was never accompanied by the

---

[15](...continued)
income, it will also permit an unsecured creditor, in the event of an improvement in the debtor's income position at any time during the period of the plan, to seek a modification so that the full amount of the debtor's disposable income remains committed to payments under the plan. This proposal ... seems to us to be a reasonable quid pro quo for the benefits conferred on the debtor under Chapter 13 which would not be available to him in a Chapter 7 case.

Oversight Hearings on Personal Bankruptcy Before the Subcommittee on Monopolies and Commercial Law of the Committee on the Judiciary, House of Representatives, 97th Cong., 1st and 2nd Sess. 22-23 (1981-1982)(statement of Mr. Vern Countryman, Harvard Law School Professor and Vice-Chairman of the National Bankruptcy Conference); Arnold & Porter, BANKR84, Hearings(21).

Although the proposed subsection 1329(d) was not finally enacted by Congress, the essential purpose behind it, to permit the unsecured creditors (and the trustee) to request an amendment to the confirmed bankruptcy plan if there was a change in the debtor's income, did become law.

requirement that the change be unanticipated.[16]  Moreover, the
legislative history indicates that the application of the doctrine of
*res judicata* was never discussed, considered, or contemplated by
Congress.  Oversight Hearings, supra.

Faced with this legislative intention, and the plain
language of the statute, we are compelled to concur with the district
court and the bankruptcy court that the Witkowski approach is the
more sensible one.  In re Barbosa, 236 B.R. at 547.  However, the
bankruptcy judge was careful to note that "motions to modify cannot
be used to circumvent the appeals process for those creditors who
have failed to object confirmation of a Chapter 13 plan or whose
objections to confirmation have been overruled." Id.  Moreover, the
bankruptcy judge noted that "§§ 1327 and 1330 accord significant
finality to confirmation orders in Chapter 13 cases." Id.
Accordingly, the court concluded that "while Witkowski may be a

---

[16]
In fact, the original proposed amendment read:

> On request of the debtor or of a creditor holding an allowed
> unsecured claim and after notice and a hearing, the plan
> shall be modified under subsection (a) of this section to
> any extent that any change in the debtor's total projected
> disposable income, as defined in section 1320 of this title,
> substantially affects whether the plan, before modification,
> complies with the conditions specified in sections
> 1325(a)(6) and 1325(c) of this title.

Proposed Section 1329(d); Oversight Hearings, supra, at 31.  The
reference to a "substantial change" was later deleted from the section
and did not become law.

correct statement of the law, as a practical matter, parties requesting modifications of Chapter 13 plans must advance a legitimate reason for doing so, and they must strictly conform to the three limited circumstances set forth in § 1329." Id. at 548.

Upon a close analysis, the bankruptcy court's conclusions of law do accord significant finality to confirmed plans without requiring specific threshold tests not contemplated by the statute. Therefore, we adopt the Witkowski approach as modified by the bankruptcy court and refrain from adopting the substantial and unanticipated test for seeking a modification pursuant to § 1329. Accordingly, we find that the Trustee and Mellon were not precluded by *res judicata* from seeking an amendment to the plan. In addition, given the factual circumstances of this case — where the Debtors realized through the sale an appreciation in value of almost 215% of the stipulated value of the property at confirmation — we find that the bankruptcy court did not abuse its discretion in granting the amendment. Witkowski, 16 F.3d at 746 ("Because modification under § 1329 is discretionary, our review is limited to a determination of whether the district court abused its discretion in modifying the plan.").

Finally, as the bankruptcy judge said, it is antithetical to the bankruptcy system to allow a debtor to "strip down" a mortgage, underpay the unsecured creditors, and obtain a super

discharge under section 1328(a) of the Code, while selling the property mortgaged for a price of two times its estimated value for purposes of the "strip down", and keeping to himself the excess of the proceeds. In re Barbosa, 236 B.R. at 552.  In fact, to allow the Debtors to keep the proceeds of the sale in such circumstances effectively defeats Congress' intention to extend the application of the "ability-to-pay" standard forward throughout the duration of the plan. Oversight Hearings, supra.

### III.  CONCLUSION

On these grounds, the district court's order upholding the bankruptcy court's judgment is Affirmed. Costs are awarded to the appellees.