**In re Mary E. THOMAS, Debtor.**

**No. 00–5695–WRS.**

United States Bankruptcy Court, M.D. Alabama.

March 27, 2003.

David G. Poston, Esq., Espy, Metcalf &
Poston P.C., Dothan, AL, for Debtor.

Sabrina L. McKinney, Esq., Montgomery, AL, for trustee.

## MEMORANDUM DECISION

WILLIAM R. SAWYER, Chief Judge.

This Chapter 13 case came before the Court for hearing on August 7, 2002, upon the Trustee's motion styled "Trustee's Motion for Instructions or in the alternative to Modify Debtor's Plan." (Doc. 17). The Trustee advises that the Debtor's residence was destroyed in a fire. The insurance carrier has paid the mortgage holder in full and tendered the remaining funds, in the amount of $25,405.33, to the Trustee. The Trustee seeks to modify the Debtor's plan to pay these funds to creditors. The Debtor objects and seeks to keep these funds for herself, notwithstanding the fact that her plan provides only a 10% dividend to the holders of unsecured claims. At the hearing counsel for the Debtor requested time to produce documentation in support of the Debtor's position. The Court held the record open, however, no evidence or documentation has been submitted. For the reasons set forth below, the Court GRANTS the Trustee's motion to modify and ORDERS that the Debtor's Plan is modified to provide that the insurance proceeds are to be paid to the unsecured creditors, in addition to the plan payments to be made by the Debtor.

### I. FINDINGS OF FACT

The Debtor filed her petition in bankruptcy pursuant to Chapter 13 of the Bankruptcy Code on October 16, 2000. At that time, she filed schedules which indicated that she owned a residence in Daleville, Alabama. Schedule A reports a cur-rent market value of the property of $42,000. The balance due on the mortgage was reported to be $38,000. On Schedule C, the Debtor claimed her equity in the property as exempt.[1]

The Debtor filed a Plan at the time she filed her petition. The plan may be summarized as follows:

1. The regular monthly mortgage payment was to be paid directly by the Debtor to the mortgagee. In addition, the mortgage arrearage (the amount by which the mortgage was delinquent at the time of the petition) was to be paid by the Trustee, with interest over the life of the plan.

2. The indebtedness secured by the Debtor's automobile was to be modified, as permitted by the Bankruptcy Code. The indebtedness owed, as of the date of the petition, was $8,236.92. The Debtor reported on her schedules, and the secured party did not dispute, that the value of the automobile was $7,125.00. The secured portion of the indebtedness was to be paid, with 10% interest, at a rate of $183.00 per month. The balance was to be treated as an unsecured claim.

3. Unsecured creditors were to receive, *pro rata,* payments without interest equal to 10% of the amount of their unsecured claims.

4. The Debtor was to fund her plan by making monthly payments to the Trustee in the amount of $206.00.

5. The property of the estate would not vest in the Debtor upon confirmation, but rather would remain property of the estate until entry of discharge, when it would vest in the Debtor.

This Court confirmed the Debtor's Chapter 13 Plan by its order of December

---

1. Alabama law allows debtors a $5,000 homestead exemption. ALA. CODE § 6–10–2. The Debtor's schedules indicate equity of $4,000, which is $1,000 less than the maximum allowed under Alabama law.

7, 2000. (Doc. 12). This case proceeded without incident until June 21, 2002, when the Trustee received a check in the amount of $25,405.33 from the mortgagee. The Trustee learned that the Debtor's residence had been destroyed by fire and that the amount of the check represented the amount paid under the Debtor's property insurance policy, less the balance due to the mortgagee. As this amount is considerably more than the equity reported in the Debtor's schedules, the Trustee filed the instant motion.[2]

## II. CONCLUSIONS OF LAW

■ The question presented is whether the Debtor's Chapter 13 Plan may be modified as requested by the Trustee. Modification of a confirmed Chapter 13 Plan is controlled by the provisions of Sections 1329(a)-(b) of the Bankruptcy Code, which provide as follows:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to-

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

(2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

11 U.S.C. § 1329(a)-(b).

The question next becomes: what standard must the Trustee meet in order to modify a confirmed plan. There are two lines of authority on this issue. One line of cases holds that a modification will be allowed so long as the modified plan meets the three statutorily mandated conditions. *See Barbosa v. Soloman (In re Barbosa)*, 235 F.3d 31, 38–41 (1st Cir.2000) (finding that there is no requirement for a change in circumstances before a party may request modification of a plan and granting Trustee's motion to modify so as to compel increased distribution to unsecured creditors following sale of property for amount in excess of that listed on schedules); *In re Witkowski*, 16 F.3d 739, 748 (7th Cir. 1994) (finding that "Section 1329 does not require any threshold requirement for a creditor, debtor or trustee to seek modification of an approved bankruptcy plan" and allowing modification in order to increase distribution to unsecured creditors when fewer than expected claims were filed); *Ledford v. Brown (In re Brown)*, 219 B.R. 191, 195 (6th Cir. BAP 1998) (finding that Bankruptcy Court abused its discretion in requiring Trustee to prove threshold changes in circumstances before allowing a modification); *Powers v. Savage*

---

**2.** This indicates that the Debtor insured her property for approximately $21,000 more than she claimed it was worth on her bankruptcy schedules. At the hearing, Debtor's counsel claimed that the increase in value was the result of appreciation in the property and requested time to submit documentation in support of this claim. As no such docu-

ments have been submitted, the Court infers that the Debtor undervalued her residence on her schedules and thereby obtained confirmation of her plan in violation of the "best interests of the creditors" requirement of 11 U.S.C. § 1325(a)(4). However, in light of the Court's disposition of this matter, this was not a determinative factor in this case.

*(In re Powers)*, 202 B.R. 618, 622 (9th Cir. BAP 1996) (adopting approach of *Witkowski* and finding that "[t]he plain language of 1329 simply does not support a change in circumstances as a prerequisite to modification"); *In re Meeks*, 237 B.R. 856, 859–60 (Bankr.M.D.Fla.1999) (Jennemann, J.) (finding that "[d]ebtors need not demonstrate a substantial, unanticipated change in circumstances in order to modify their confirmed chapter 13 plan"); *In re Studer*, 237 B.R. 189, 193 (Bankr.M.D.Fla.1998) (Jennemann, J.) (finding that the Trustee did not need to establish a substantial change in circumstances in order to modify a plan to include settlement proceeds from a personal injury action).

The other line of cases holds that a confirmed Chapter 13 plan may not be modified unless there is a substantial change in the debtor's circumstances. *See Arnold v. Weast (In re Arnold)*, 869 F.2d 240, 243 (4th Cir.1989) (stating that "[t]he doctrine of *res judicata* bars an increase in the amount of monthly payments only where there have been no unanticipated, substantial changes in the debtor's financial situation"); *In re Euler*, 251 B.R. 740, 743–47 (Bankr.M.D.Fla. 2000) (Williamson, J.) (examining legislative history and concluding that because appreciation of real property could not be considered unanticipated, the confirmed plan is res judicata so as to preclude Trustee's modification); *Collier v. Valley Federal Savings Bank (Matter of Collier)*, 198 B.R. 816, 816 (Bankr.N.D.Ala. 1996) (finding that the receipt of insurance proceeds after fire destroyed rental property constituted an unexpected and extraordinary change in circumstances, which warranted modification of a confirmed plan); *In re Pearson*, 1995 WL 17005062, *4–5 (Bankr.S.D.Ga.1995) (examining the legislative history, concluding that "the proponent of a post-confirmation modification under section 1329 must demonstrate, as a pre-condition to modification, that the debtor has undergone a substantial, unanticipated change in circumstances following confirmation" and finding that debtor's return to school was not unanticipated); *In re McCray*, 172 B.R. 154, 158 (Bankr.S.D.Ga.1994) (finding that receipt of tax refund does not constitute a substantial change which would warrant modification); *In re Duke*, 153 B.R. 913, 918–19 (Bankr.N.D.Ala. 1993) ("modification under § 1329 is allowed only after a movant establishes a postconfirmation material change of circumstances and only after the court finds that the modification complies with the good faith requirement of § 1325(a)(3), which includes a judicial determination that the change of circumstances is beyond the control of the debtor and was not caused or contributed to by the debtor") (internal citations omitted).

■  Having examined the relevant authority, this Court is persuaded that the position espoused by the First and Seventh Circuits in *Barbosa* and *Witkowski* is correct.  Accordingly, the Court rejects the position advanced by the Fourth Circuit in *Arnold*.  This Court holds that the Trustee is entitled to modify a confirmed plan if the statutorily mandated requirements are satisfied.  The Court will not superimpose a "substantial change in circumstances" requirement, because it is not supported by the text of Section 1329.

■  The task of arriving at the meaning of a section of the Bankruptcy Code begins with the plain language of the statute.  *Patterson v. Shumate*, 504 U.S. 753, 757–58, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240–41, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).  When the statute's language is clear, the sole function of the court is to enforce it according

to its terms. *Ron Pair Enterprises,* 489 U.S. at 240–41, 109 S.Ct. 1026 (citation omitted); *see Burlington Northern R. Co. v. Oklahoma Tax Comm'n,* 481 U.S. 454, 461, 107 S.Ct. 1855, 95 L.Ed.2d 404 (1987) (if statute is unambiguous, judicial inquiry is complete) (citations omitted). As Section 1329 does not contain a requirement for a "substantial" or "unanticipated" change in circumstances, it is improper to read such a requirement into the statute. *Barbosa,* 235 F.3d 31, 37–38.

■ The "plain language" approach to statutory construction has an exception. The plain meaning of legislation should be conclusive, except in the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." [citation omitted]. In such cases, the intention of the drafters, rather than the strict language, controls. *Ron Pair Enterprises,* 489 U.S. at 242, 109 S.Ct. 1026; *see Hubbard v. United States,* 514 U.S. 695, 702, 115 S.Ct. 1754, 131 L.Ed.2d 779 (1995) ("absent any 'indication that doing so would frustrate Congress's clear intention or yield patent absurdity, our obligation is to apply the statute as Congress wrote it'"). Therefore, the Court may not engraft the "substantial" or "unanticipated" conditions over the plain language of the Code, unless it can be shown that to fail to do so would produce a result "demonstrably at odds" with the intentions of its drafters. To make this determination, the Court will examine the result urged by the Trustee. Unless the result urged by the Trustee is demonstrably at odds with the intentions of the drafters of the Code, the additional, nonstatutory conditions should not be applied.

The point of contention in this case centers on the disposition of the excess insurance proceeds. If we assume for a moment that the Court was presented with the present fact pattern upon confirmation of the initial plan, rather than upon modification of a previously confirmed plan, it is clear that the Trustee would prevail. Indeed, the Debtor could not confirm a plan which provided for pro rata payments of only 10% to the holders of unsecured claims, while allowing the Debtor to retain more than $25,000 in insurance proceeds upon the destruction of her residence. Such a plan would run afoul of Section 1325(a)(4), which is sometimes referred to as "the best interests of the creditors test."[3] In a case under Chapter 7, the Debtor's property is liquidated and the proceeds, over and above any amount allowed for the Debtor's homestead exemption, is paid to creditors. 11 U.S.C. § 726(a). In a case under chapter 7, a distribution of nonexempt proceeds is not made to the debtor, unless all allowed claims of creditors are paid in full. § 726(a). In the instant case, it therefore follows that Section 1325(a)(4) would not permit confirmation of a plan which resulted in the payment of $25,000 to the debtor.

The next question is whether the modification proposed by the Trustee complies with the provisions of Section 1329. The proposed modification is one to increase the amount to be paid to the holders of unsecured claims. Therefore, the modification is one of a type contemplated by Section 1329(a)(1). Next, it must determined whether the requirements of Section 1322(a)-(b), Section 1323(c) and Section 1325(a) are met. *See* 11 U.S.C. § 1329(b). Having carefully examined the

---

**3.** Section 1325(a)(4) provides that "the court shall confirm a plan if... (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of the title on such date."

modification proposed by the Trustee and the existing Chapter 13 Plan, the Court finds that the Section 1329(b) requirements are met.[4]

▇▇▇ Some courts that have imposed a "change in circumstances" test have relied upon Section 1327(a), which provides that "[T]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). This language does not limit the right of a party in interest to modify a confirmed plan, rather it is a description of the effect of confirmation. *In re Perkins*, 111 B.R. 671, 672 (Bankr.M.D.Tenn.1990). A confirmed plan binds the parties, subject to the right of a party in interest to modify the confirmed plan. *Id.*

The United States Court of Appeals for the First Circuit addressed a similar situation in *Barbosa v. Soloman*, 235 F.3d 31 (1st Cir.2000). In *Barbosa*, a debtor in a case under chapter 13 confirmed a plan which modified (or "stripped down") a lien on non-residential real property. The property in question was investment property which was subject to mortgage in the amount of $114,000. The value of the property, as of the date of the petition, was $64,000. The plan modified the rights of the mortgage holder, treating its claim as secured to the extent of the value of the property ($64,000) and treating the balance ($50,000) as an unsecured claim.[5] As in the case at bar, the unsecured claims in *Barbosa* were to be paid at a 10 cents on the dollar, without interest. *Barbosa*, 235 F.3d at 33.

After confirmation of the plan, the Debtors sought to sell the investment property for $137,500. The trustee then moved to modify the plan to provide for the payment of the proceeds to the holders of unsecured claims. The debtors, on the other hand, wanted to keep over $73,000 in proceeds for themselves. *Id.* at 33–34. In the case at bar, the Debtor's residence was de-

---

4. Section 1322(a) has three sub-paragraphs. Sub-paragraph (1) calls for the submission of future earnings in an amount sufficient to fund the plan. This requirement is satisfied. Sub-paragraph (2) calls for full payment of section 507 priority claims. This requirement is satisfied. Sub-paragraph (3) is met as all claims of the same class are treated equally.

Section 1322(b) has 10 sub-paragraphs which are largely technical in nature, most of which do not apply. Section 1322(b)(8) permits a plan to "provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor." In this case, the unsecured claims are to be paid, in part, from the proceeds of property of the estate, which is permissible under this Code section. Section 1322(b)(9) permits a plan to "provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity." The original plan in this case provided that property of the estate would remain property of the estate and not vest in the Debtor until entry of discharge pursuant to Section 1328. The Trustee's proposed modifi-

cation makes no change in this aspect of the Plan. Therefore, the proposed modification complies with the provisions of Section 1322(b).

Section 1323(c) concerns the presumed treatment of the modified plan by the holders of secured claims based upon their acceptance or rejection of the original plan. This provision is not at issue in the instant case.

Section 1325(a) contains six sub-paragraphs setting forth requirements for confirmation of a plan. The provisions relevant to the instant case are as follows: Section 1325(a)(3) imposes a requirement of good faith. The Court, having examined the modification proposed by the Trustee, finds that it is proposed in good faith. Section 1325(a)(4) is the codification of the best interests of the creditors test, which the Court has discussed *infra*. The Court finds that the proposed modification meets this requirement.

5. Lien stripping, or modification, is expressly permitted by 11 U.S.C. § 1322(b)(2).

stroyed by fire, yielding insurance proceeds, which the Debtor seeks to keep for herself. In both the instant case and *Barbosa*, the trustee was confronted with cash proceeds from the distribution of property of the estate. In both cases, the trustee was confronted with the argument that the plan cannot be modified because it binds the parties. 11 U.S.C. § 1327(a). The Debtors in *Barbosa* advanced two arguments in support of their position. The first argument is that a plan cannot be modified unless an unanticipated and substantial change in circumstances can be shown. The second argument is that the doctrine of *res judicata* bars confirmation of the proposed modified plan.

In *Barbosa*, the First Circuit rejected the "substantial and unanticipated" glaze put on Section 1329 and held that:

> From the start, we note that Debtors' arguments are not grounded on the specific provisions of the Code; since section 1329 does not in itself establish a criterion for granting a modification, other than the plan as modified must comply with all applicable provisions of the Code. 11 U.S.C. § 1329(b), incorporating by reference 11 U.S.C. § 1325(a).

*Barbosa*, 235 F.3d at 38. The Court summarized the requirements for a modification as follows:

> First, "modifications are only allowed in [the] three limited circumstances" provided by the statute. Second, as provided by § 1329(b)(1) of the Code, "a modified plan is only available if §§ 1322(a), 1322(b), 1325(a) and 1329(c) of the bankruptcy code are met." Third, a modification may only be proposed in good faith. Fourth, "all proposed modifications need not be approved and in practice not all modifications are approved."

*Id.*, at 39–40 (citing *In re Witkowski*, 16 F.3d at 745–46).

As set forth by the First Circuit in *Barbosa*, the requirement for a "substantial" or "unanticipated" change in circumstances is not supported by the Code and such requirements will not be imposed by this Court. "The Code, in this instance § 1329, does not require any threshold requirement for a modification and we will not use the legislative history to create a rule where none exists." *In re Witkowski*, 16 F.3d 739, 744 (7th Cir.1994); *see Max Recovery Inc. v. Than (In re Than)*, 215 B.R. 430, 435 (9th Cir. BAP 1997) ("[t]he unanticipated, substantial change test is judicial gloss to § 1329").

The Court finds further support for its position by considering the powerful policy argument advanced by the Court in *Barbosa:*

> [I]t is antithetical to the bankruptcy system to allow a debtor to "strip down" a mortgage, underpay the unsecured creditors, and obtain a super discharge under section 1328(a) of the Code, while selling the property mortgaged for a price of two time its estimated value for purposes of the "strip down," and keeping to himself the excess of the proceeds. In fact, to allow the Debtors to keep the proceeds of the sale in such circumstances effectively defeats Congress' intention to extend the application of the "ability-to-pay" standard forward throughout the duration of the plan.

*Barbosa*, 235 F.3d at 41 (citations omitted).

The same policy applies in the instant case. While this case does not involve the "stripping" of a lien, the rationale as to underpayment of unsecured creditors does apply. The undersigned further supports this policy with an observation about a phenomenon, common in this District, which is illustrated by the case at bar. Frequently, in an effort to minimize their payments to the Chapter 13 Trustee, debtors undervalue their residence, as the

Debtor in this case did. In a Chapter 13 case, a Debtor must pay her unsecured creditors an amount which is not less than the non-exempt equity in her residence. If she did not do so, her plan could not be confirmed because it would fail to satisfy the "best interests of the creditors test." 11 U.S.C. § 1325(a)(4). The only party in interest, other than the debtor, who would have any reason to know the value of the debtor's residence is the mortgage holder. As long as the mortgage holder is satisfied, there is no adverse party with knowledge of the value of the residence who has any incentive to object to confirmation. The parties directly harmed by the undervaluation are unsecured creditors, who usually do not have knowledge about or information regarding the value of the residence. Even the Chapter 13 Trustee does not know anything about the value of a debtor's property, except what is shown in the schedules. As these cases demonstrate, the property is frequently undervalued. Moreover, the Trustee does not have a source of funding to conduct his own investigation into the property value or to purchase a property appraisal. In the vast majority of cases, there is no evidence to controvert the value that the Debtor assigns to her residence.

■ The Court will next consider whether the doctrine of *res judicata* applies to preclude the Trustee from modifying the Debtor's Chapter 13 Plan in this case. In addressing this question, the Seventh Circuit in *Witkowski* stated that, "Congress need not state precisely any intention to overcome the application of res judicata. Rather, if the plain language of the statute makes it clear that res judicata does not apply, it is sufficient." *In re Witkowski,* 16 F.3d at 745 (citation omitted); *see Astoria Federal Sav. And Loan Ass'n v. Solimino,* 501 U.S. 104, 108, 111 S.Ct. 2166, 115 L.Ed.2d 96 ("[W]here a

common law principle is well established, as are the rules of preclusion, the courts may take it as given that Congress has legislated with an expectation that the principle will apply except 'when a statutory purpose to the contrary is evident.'") (citations omitted). The *Witkowski* Court further elaborated:

> [T]he statutory framework of the Bankruptcy Code plainly assumes the possibility of modifications of bankruptcy plans after they are confirmed. Section 1327 of the bankruptcy code provides that "the provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." § 1327. Congress, however, also provided a mechanism to change the binding effect of § 1327 when it passed § 1329 to allow for modifications. "If the drafters of the Bankruptcy Code intended for a confirmation hearing to have res judicata effect, there would be little or no reason for Section 1329."

*Id.,* at 745 (citing *In re Williams,* 108 B.R. 119, 123 (Bankr.N.D.Miss.1989)). The undersigned adopts this reasoning.

Another policy argument against the application of the doctrine of *res judicata* to prevent the amendment of a Chapter 13 plan is the inherent lack of mutuality to orders of confirmation in Chapter 13 proceedings. Section 1307(a) provides that "a debtor may convert a case under this chapter to a case under chapter 7 of this title at any time." 11 U.S.C. § 1307(a). Further, if the case has not been converted previously, the Court is bound to dismiss the case at the request of the Debtor. 11 U.S.C. § 1307(b). As a Chapter 13 case is purely a voluntary proceeding, these provisions allow a Debtor to dismiss or convert his case at any time. Therefore, a debtor

who becomes dissatisfied with his plan is free to dismiss or convert his case at his discretion. However, other parties in interest may dismiss or convert only upon a showing of cause. 11 U.S.C. § 1307(c). If *res judicata* prevented amendment of a plan, the lack of mutuality would leave the debtor in a position where he could bind his creditors but would not be bound himself. The only way to prevent the imposition of this otherwise untenable position upon creditors is to permit them to modify the Chapter 13 plan, within the guidelines imposed by the Code, but not bind them by the nonmutual application of the doctrine of *res judicata.* It would be inequitable to bind the creditors to the terms of a confirmed plan, while leaving debtors two "escape" routes. The doctrine of *res judicata* does not apply until entry of an order of discharge pursuant to Section 1328.

This Court has previously addressed the application of *res judicata* in the context of a motion to modify. *See In re Woodhouse,* 119 B.R. 819 (Bankr.M.D.Ala.1990) (Steele, CJ). In *Woodhouse,* this Court was presented with the Trustee's motion to modify a Chapter 13 plan, filed after the Debtor had made all of the payments under the plan. The Trustee sought to increase the percentage to be paid to the unsecured creditors and extend the period during which payments were to be made. *Id.* at 820. Section 1329(a) provides that "at any time after confirmation of the plan but before the completion of payments under such, plan, the plan may be modified." Because payments had been completed, this Court properly denied the Trustee's motion. However, this Court cited *Arnold* and invoked the principle of *res judicata* in reaching its decision. As the undersigned stated above, the Court will follow the reasoning of the Seventh Circuit in *Witkowski* and reject the holding of the Fourth Circuit in *Arnold.* To the extent

that this Court in *Woodhouse* previously relied on *Arnold,* the undersigned respectfully departs from that reliance.

### III. CONCLUSION

For the reasons set forth above, the Court concludes that the Trustee's Motion to Modify is due to be granted. Specifically, the Court finds that the Trustee has met the requirements for the modification of a Chapter 13 plan after confirmation. 11 U.S.C. § 1329. Further, the doctrine of *res judicata* does not operate to bar amendment of a confirmed plan. The Court will enter a separate order granting the motion and ordering the modification of the plan.

### ORDER

For the reasons set forth in the Court's Memorandum Decision of this date, it is

ORDERED that the Trustee's Motion to Modify Debtor's Plan is GRANTED and the Debtor's plan is modified in order to pay the surplus insurance proceeds for the benefit of unsecured creditors. It is

ORDERED that the Trustee remit $4,000 to the Debtor. This payment represents the amount of equity in the residence, as reported in the Debtor's schedules. The Trustee shall retain the balance of $21,405.33 and the plan is modified in order to pay that amount to the creditors.